H.S.M. ACQUISITIONS, INC., Appellant,

v.

Marcella B. WEST, et al., Appellees.

No. 13–93–427–CV.

Court of Appeals of Texas, Corpus Christi.

Jan. 18, 1996.

Rehearing Overruled March 14, 1996.

S. Loyd Neal, III, Pohl, Bennett & Mathews, Houston, for appellant.

Leo O. Bacher, Jr., Baker & McKenzie, Dallas, Jerald M. Rasansky, Baker & McKenzie, Dallas, B.D. Griffin, The Woodlands, William T. Powell, Houston, for appellees.

## OPINION

Before FEDERICO G. HINOJOSA, Jr., CHAVEZ and BASS.[1]

FEDERICO G. HINOJOSA, Jr., Justice.

H.S.M. Acquisitions, Inc. appeals from the granting of summary judgment after reconsideration by the trial court. By three points of error, H.S.M. contends that improper notice of appellees' motion to reconsider was given, that numerous fact issues are raised by H.S.M.'s pleadings, and that the trial court erred in denying its motion for new trial. We affirm in part and reverse and remand in part.

This litigation arises out of a series of lease transactions involving property owned by Marcella B. West at 3911 Fondren in Houston. On or about January 1, 1979, West leased the property to Jim West & Company for a 10-year term expiring on December 31, 1988. The lease contained a five-year renewal option. On or about September 11, 1981,[2] Jim West subleased the first floor of the building to Spectrix Corporation. Keystone Environmental Resources, Inc., a Delaware corporation (Keystone–DE) and subsidiary of Koppers Company (Koppers), succeeded Spectrix in 1986. Effectively, Keystone–DE became the sublessee.

On December 10, 1982, H.S.M. bought Jim West & Co. and expressly assumed its rights and obligations under the lease. H.S.M. closed its corporate offices on the second floor of the building and vacated the property

---

1. Justice Sam Bass, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

2. According to H.S.M., Jim West & Co. sublet the first floor of the building to Spectrix Corp. on September 11, 1981. The sublease is dated September 11, 198__ (year not entered). According

to appellees, Koppers Company and Koppers Subsidiary, Spectrix executed the sublease on or about November 12, 1981. The summary judgment record includes appellees' "Supplemental Volume of Summary Judgment Evidence," which includes a letter, dated November 12, 1981, showing West's consent to the assignment and subletting to Spectrix.

by April 1983. On September 9, 1987, H.S.M. subleased the second floor to Keystone–DE for a period of three months from September 1987 to December 1987. H.S.M. and Keystone–DE executed an amendment to the sublease agreement, and Koppers guaranteed Keystone–DE's performance.

On June 29, 1988, Keystone–DE sent a letter to West, which West claims constituted an exercise of the renewal option to extend the term of the lease for a five-year period beginning January 1, 1989. On September 16 1988, Keystone Environmental Resources, Inc., a Pennsylvania corporation (Keystone–PA) and wholly-owned subsidiary of Chester Environmental Group, Inc. (Chester) [3], purchased certain assets of Keystone–DE, including the sublease. Keystone–DE underwent a name change and became known as Koppers Subsidiary XXII Company, Inc. (Koppers–Sub).

On September 19, 1988, Keystone–DE sent West a letter informing her that Chester had acquired Keystone–DE and that it was "placing a hold" on the "lease renewal notice." Three months later, on December 31, 1988, the term of the lease expired, and H.S.M. discontinued paying rent. From January 1, 1989 to October 31, 1990, Chester/Keystone remained in the building either pursuant to renewal or as a holdover tenant. During this twenty-two month period, Keystone–PA paid West $13,372.86 per month for the occupancy of the property, without prejudice to any party's rights with regard to the pending controversy. The twenty-two monthly payments totalled approximately $294,000.

Disputes evolved between West and appellees about whether the lease had been extended under an option clause of the lease and other issues. On May 4, 1989, Marcella West brought suit against H.S.M. and appellees, Koppers, Koppers–Sub, Keystone, and Chester for breach of the lease and various sublease agreements. West also sued Chester for tortious interference.

On October 16, 1990, West nonsuited all of the appellees. On November 30, 1990, West and appellees entered into a Compromise and Settlement Agreement. Appellees agreed, in part, as follows:

1. At the closing, as defined herein, Settling Defendants will assign, convey, and deliver to West, without recourse, all of their right, title and interest to the $45,000 restoration payment from HSM Acquisitions, Inc. ("HSM") under the terms of the lease, sublease and/or amended sublease for 3911 Fondren.... West agrees to obtain from HSM as part of any settlement of the surviving claim, a full release of Keystone, Koppers, Spectrix and Chester. It is understood that in the event of trial, this requirement does not apply.

H.S.M. filed a third-party action against all appellees on January 11, 1991. H.S.M. filed its First Amended Third Party Petition on April 19, 1991. On May 1, 1991, the trial court ordered a separate trial on the third-party claims. On May 20, 1991, West filed her Sixth Amended Original Petition against H.S.M. only.

In its third-party action against appellees, H.S.M. alleged that, as subtenants of the property, appellees were responsible for the damages suffered by West. H.S.M. eventually settled with West and reduced the settlement to a final judgment. As third-party plaintiff against appellees, H.S.M. sought to recover the sum of the judgment and the attorneys' fees and expenses incurred in defending the West suit. H.S.M. also sought exemplary damages.

■ By its first point of error, H.S.M. complains that the trial court's rehearing of a summary judgment motion without appropriate notice to H.S.M. was improper. Under this point of error, H.S.M. first contends that Tex.R.Civ.P. 166a requires that "reasonable notice" be given for a hearing on a motion for summary judgment, even reconsideration of a denied motion. H.S.M. argues that it received notice of the motion to reconsider only three business days prior to the hearing. Secondly, H.S.M. contends that the motion to reconsider informed H.S.M.'s counsel that

---

3. According to appellant, the parent corporation of the newly formed Keystone–PA was a company known as The Chester Engineers, Inc., which was subsequently renamed Chester Environmental Group, Inc.

appellees were asking the trial court to reconsider the motion for summary judgment relating to appellees' counterclaims against H.S.M. H.S.M. argues that at the hearing on the motion to reconsider, appellees asked the trial court to reconsider the motion for summary judgment addressing H.S.M.'s affirmative claims against appellees. H.S.M. argues that the lack of notice that appellees were going to ask the trial court to reconsider the motion for summary judgment addressing H.S.M.'s affirmative claims against appellees and the raising of new issues during oral argument, which were not made the subject of any prior motion, significantly prejudiced H.S.M. at the summary judgment hearing. H.S.M. does not challenge the trial court's authority to reconsider its original ruling denying the motions for summary judgment.

Appellees filed three different motions for summary judgment. On August 31, 1993, appellees filed "Cross–Plaintiffs' Motion for Partial Summary Judgment" relating to appellees' counterclaims against H.S.M. On September 4, 1993, they filed "Third–Party Defendants' Motion for Summary Judgment" relating to H.S.M.'s third-party action against appellees. On September 28, 1993, Koppers and Koppers–Sub filed a Supplemental Motion for Summary Judgment. The trial court denied the first two motions by order dated October 13, 1992. The trial court did not rule on the supplemental motion.

On February 16, 1993, appellees filed "Counter–Plaintiffs' Motion to Reconsider the Court's Order Denying Counter–Plaintiffs' Motion for Summary Judgment." In this motion, appellees were denominated "Third–Party Defendants, Counter–Plaintiffs, and Cross–Plaintiffs." The motion to reconsider asked the trial court "to reconsider only one of the motions: Third Party Defendants' Motion for Summary Judgment on its Counterclaim against H.S.M. and to allow brief oral argument on that motion alone." The motion further advised the court that

[i]f, upon rehearing, this Court were to grant the defensive Motion for Summary Judgment, this case would be completely disposed of: (1) HSM's third-party claim for indemnity would be resolved; (2) Third–Party Defendants' counterclaim would be resolved; and (3) Chester and Keystone's cross-claim against West would be rendered largely moot.

According to H.S.M., the motion to reconsider gave notice that appellees prayed for reconsideration only of appellees' first motion, "Cross–Plaintiffs' Motion for Partial Summary Judgment" relating to their counterclaims against H.S.M. H.S.M. asserts that, at the hearing held on February 22, 1993, appellees instead urged reconsideration of its second motion addressing H.S.M.'s affirmative claims against appellees, styled "Third–Party Defendants' Motion for Summary Judgment." According to H.S.M., appellees presented no argument relating to their counterclaims against H.S.M., as H.S.M. had expected. The trial court granted appellees' motion to reconsider and entered an Order Granting Third–Party Defendants' Motion for Summary Judgment.

■ Appellees Keystone and Chester, by separate brief, contend that it is within the inherent authority of a trial court to reconsider an interlocutory summary judgment order and that no motion or notice to H.S.M. was necessary. Notwithstanding, appellees argue that H.S.M. was given fair and adequate notice of the reconsideration requested and that H.S.M. waived any objection to notice by failing to so object and by proceeding with argument at the hearing.

The record reflects that the motion to reconsider was served on all counsel by fax transmission on February 15, 1993, seven days before the hearing. H.S.M. filed no response, raised no objection alleging a deficiency in the motion's substance or timing, and made no request for a continuance. Counsel for H.S.M. appeared at the hearing on the motion to reconsider and extensively argued the merits of the motion. H.S.M. does not contend that it received inadequate notice of any of the three original motions for summary judgment filed by appellees.

■ A trial court has the inherent authority to change or modify any interlocutory order or judgment until the judgment be-

comes final. A trial court may, in the exercise of discretion, properly grant summary judgment after having previously denied summary judgment without a motion by or prior notice to the parties, as long as the court retains jurisdiction over the case. *See Grace v. Zimmerman*, 853 S.W.2d 92, 98 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Evans v. Hoag*, 711 S.W.2d 744, 745 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Hunte v. Hinkley*, 731 S.W.2d 570, 571 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). We conclude that the trial court had jurisdiction over this case, had authority to reconsider its previous ruling, and had authority to grant this summary judgment.

In addition, we conclude that appellant failed to preserve error by objecting timely. The record reflects that appellant failed to object on the grounds it now raises on appeal concerning lack of notice. We hold that the trial court did not commit error by granting appellees' motion to reconsider and by rendering summary judgment in favor of appellees. Accordingly, we overrule appellant's first point of error.

By its second point of error, H.S.M. complains that the trial court erred in granting appellees' motion for summary judgment because there are numerous disputed material fact questions raised by H.S.M.'s pleadings against appellees. H.S.M. refers to the take-nothing summary judgment rendered against H.S.M. on its third-party claims against appellees. H.S.M. contends that the trial court should have construed the relevant portions of the respective lease agreements to permit H.S.M. to recover its defense costs in the West lawsuit and to indemnify H.S.M. for the settlement awarded to West. H.S.M. also contends that the trial court should have permitted H.S.M. to pursue its breach of contract and tortious interference claims against appellees. H.S.M. argues that appellees did not meet their burden at summary judgment to establish as a matter of law that one or more elements of recovery was missing from each of H.S.M.'s allegations.

The standards for reviewing a motion for summary judgment are well established:

1. The movant for summary judgment has a burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.
3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

Upon appeal of a summary judgment, the question is "whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more of the essential elements of plaintiff's cause of action." *Muñoz v. Gulf Oil Co.*, 693 S.W.2d 372, 373 (Tex.1984); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). A defendant who moves for summary judgment must show that the plaintiff has no cause of action. A defendant may meet this burden by either 1) disproving at least one essential element of each theory of recovery or 2) conclusively proving all elements of an affirmative defense. *Mitchell v. City of Dallas*, 855 S.W.2d 741, 748 (Tex. App.—Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex.1994). If the defendant is the movant, and he submits summary judgment evidence disproving at least one element of the plaintiff's case, then summary judgment should be granted. *Bradley v. Quality Serv. Tank Lines*, 659 S.W.2d 33, 34 (Tex.1983) (per curiam); *Tirres v. El Paso Sand Prods., Inc.*, 808 S.W.2d 672, 674 (Tex.App.—El Paso 1991, writ denied). If the movant's motion and competent summary judgment evidence establish the movant's right to judgment as a matter of law, the non-movant must present controverting summary judgment evidence raising a fact issue. *Peña v. TXO Prod. Corp.*, 828 S.W.2d 188, 190 (Tex.App.—Corpus Christi 1992, no writ).

The scope of review and appeal from summary judgment is limited. Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds

for reversal. Tex.R.Civ.P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The appellate court may consider the record only as it existed at the time the summary judgment was signed. *E.B. Smith Co. v. United States Fidelity & Guar. Co.*, 850 S.W.2d 621, 624 (Tex.App.—Corpus Christi 1993, writ denied); *Johnnie C. Ivy Plumbing Co. v. Keyser*, 601 S.W.2d 158, 160 (Tex.Civ.App.—Waco 1980, no writ). Moreover, an appellate court may not raise grounds for reversing a summary judgment *sua sponte*. *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 210 (Tex.1990) (per curiam).

■ When a motion for summary judgment alleges more than one basis of support, and the order granting the motion is silent as to the reason for granting the motion, the appellant must show that each independent ground alleged in the motion is insufficient to support summary judgment, and the summary judgment must be affirmed if any of the theories are meritorious. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex. 1989); *Garcia v. Andrews*, 867 S.W.2d 409, 411 (Tex.App.—Corpus Christi 1993, no writ); *Valles v. Texas Comm'n on Jail Standards*, 845 S.W.2d 284, 287 (Tex.App.—Austin 1992, writ denied); *Kyle v. West Gulf Maritime Ass'n*, 792 S.W.2d 805, 807 (Tex. App.—Houston [14th Dist.] 1990, no writ).

In its First Amended Third–Party Petition against appellees, H.S.M. alleged that pursuant to article VI(O)(b) of the sublease, the subtenants (appellees) assumed all liability under the Primary Lease once they exercised the option to renew the Primary Lease. Article VI(O)(b) provides that,

> in the event [subtenant] exercises its option to renew the Primary Lease . . ., the following shall occur:
>
> (b) [H.S.M.] shall be released from all liability under the Primary Lease. . . .
>
> (c) [Subtenant] shall accept [H.S.M.]'s assignment of the Primary Lease and shall expressly assume in writing (effective January 1, 1989) all of the obligations, agreements and covenants of [H.S.M.] as "Tenant", under the Primary Lease with regard to the entire Building and Building Site and shall

agree to perform said obligations, agreements and covenants throughout the renewal term or terms.

H.S.M. alleged that, under the amended sublease, Keystone–DE assumed all the obligations of the sublease. H.S.M. argues that Keystone–DE and Koppers, as its guarantor, are liable for all rentals and other lease obligations after December 31, 1988.

Alternatively, H.S.M. alleged that if there was no renewal, Keystone became a holdover tenant and, thus, subject to the holdover provision of the sublease, article V, paragraph D. H.S.M. contends that the third-party defendants agreed to indemnify and hold H.S.M. harmless from any and all liability arising from damages to the property and to pay liquidated damages of double rent for the entire holdover period. H.S.M. contends that it was unaware that Keystone–DE had assigned its rights and obligations under the lease and sublease, as amended, to Keystone–PA and Chester, and that no consent for such transfer was sought or obtained from H.S.M.

Simply stated, H.S.M. seeks indemnity for West's claimed damages and liquidated damages. It relies on two specific provisions of the sublease: the hold-over provision and the third-party liability provision.

H.S.M. further alleged that Chester caused and participated in causing the other subtenants to breach the lease agreement and that Chester's conduct constituted tortious interference with H.S.M.'s contractual rights. H.S.M. sought actual and punitive damages against Chester.

In sum, H.S.M. alleged that, although demand was made, appellees failed to indemnify H.S.M. in breach of the sublease agreement. H.S.M. argues that the West lawsuit arose from appellees' failure to vacate the property and to restore the premises to its original condition. H.S.M. prayed for defense costs and filing costs as part of its indemnity claim. Finally, H.S.M. asserted a claim of tortious interference against Chester and requested punitive damages.

Appellees, as third-party defendants, moved for summary judgment on seven

grounds: 1) contractual estoppel, 2) equitable estoppel, 3) H.S.M.'s failure to make settlement payment to West, 4) unreasonable and bad faith settlement, 5) no contractual right of indemnity, 6) no liquidated damages, and 7) any alleged tortious interference was justified.

The summary judgment evidence includes:[4] 1) the transcript of the November 20, 1990 Hearing on Motion to Compromise Settlement, 2) the Settlement Agreement between West and H.S.M., 3) the Bankruptcy Court Motion for Approval of Compromise and Settlement of Controversy, and 4) the Final Judgment Against H.S.M., dated July 24, 1991.

### Good Faith Settlement

Appellees assert that H.S.M. cannot maintain an action for indemnity against them because H.S.M.'s settlement with West was not made in good faith under the circumstances, and the terms of the settlement were unreasonable. Appellees further contend that H.S.M. and West entered into a collusive, agreed judgment against H.S.M. that bore no reasonable relationship to West's damages.

■ For a settling indemnitee to recover an amount of the settlement from its indemnitor, the indemnitee must show its potential liability to a claimant and that the settlement was reasonable, prudent, and made in good faith under the circumstances. *Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.*, 490 S.W.2d 818, 824 (Tex.1972); *Getty Oil Corp. v. Duncan*, 721 S.W.2d 475, 477 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *see also Aerospatiale Helicopter Corp. v. Universal Health Servs., Inc.*, 778 S.W.2d 492, 500 (Tex.App.—Dallas 1989), *cert. denied*, 498 U.S. 854, 111 S.Ct. 149, 112 L.Ed.2d 115 (1990) (absent an unconditional contractual right to settle, an indemnitee, which settles a claim without obtaining a judicial determination of its liability, assumes the burden in its action for reimbursement of proving facts that might have rendered it liable to claimant as well as the reasonableness of the amount the indemnitee paid). Thus, if appellees submitted summary judgment evidence which proved that H.S.M.'s settlement with West was not made in good faith and was neither reasonable nor prudent under the circumstances, then we must affirm the summary judgment.

As part of their settlement with West, appellees agreed to pay West $330,000 "for, among other things, the restoration of the leased premises to the condition required by West...." Appellees also assigned to West a $45,000 claim they had against H.S.M. The settlement did not include the $294,-

---

4. This appeal arises from the trial court's granting of "Third Party Defendants' Motion for Summary Judgment." The motion is supported by a brief and a "Supplemental Volume of Summary Judgment Evidence" containing ten items, numbered 6 through 14. In a footnote contained in the motion and brief, appellees incorporate by reference a "Summary Judgment Evidence Volume" attached to a previously filed motion entitled "Cross–Plaintiffs' Motion for Summary Judgment." The Volume contains fourteen items, numbered 1 through 5. Not all of the items listed in the Volume are referenced in the Third Party Defendants' Motion for Summary Judgment and supporting brief.

We do not consider whether evidence incorporated by reference in the motion for summary judgment, brief in support, or both, but not attached, is part of the summary judgment record. In *Wilson v. Burford*, 904 S.W.2d 628, 629 (Tex.1995) (per curiam), the supreme court held that a deposition transcript attached to a brief in support of a motion for summary judgment, and *referenced in the nonmovant's response*, is proper summary judgment evidence on which either party may rely. *Id.* (relying upon Tex.R.Civ.P. 166a(c)). Although the motion did not incorporate or refer to any specific summary judgment evidence, the Court held that Rule 166a(c) plainly includes in the summary judgment record, evidence referenced either in the motion or response. Tex.R.Civ.P. 166a(c); *Wilson*, 904 S.W.2d at 629. This evidence, however, is specifically limited to "(i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, *on file at the time of the hearing, or filed thereafter and before judgment with permission of the court...."* Tex.R.Civ.P. 166a(c) (emphasis added).

Here, a volume of summary judgment evidence is merely incorporated by reference in the motion and supporting brief (by "Tab" number) but not specifically identified in or attached to the motion or response. We question but do not determine whether this is proper summary judgment evidence.

198.96 that appellees had already paid West to occupy the premises from January 1, 1989 to October 31, 1990.

After her settlement with appellees, West continued to pursue her claim against H.S.M. for loss of rental income and costs to reconstruct the building and premises. West alleged damages of over $1.8 million in addition to the relief she had already obtained in her 1990 settlement with appellees. Thereafter, H.S.M. invoked the terms of the sublease and asked appellees to recognize their duty to defend H.S.M. and indemnify it from any loss associated with West's allegations. Appellees refused to recognize any obligation to indemnify H.S.M. After two days of trial, H.S.M. decided to settle with West. H.S.M. argues that without any assurances from appellees and faced with mounting legal fees and expenses and potential damages totalling millions of dollars, H.S.M. chose to mitigate its damages by entering into a compromise agreement with West. The agreement was reduced to final judgment. H.S.M. argues that the settlement was reasonable, prudent, and entered into in good faith given the circumstances and potential liability that H.S.M. faced in the West lawsuit. We disagree.

In the July 1992 Agreed Final Judgment against H.S.M., West was awarded $412,248 for repair costs, $546,805 for unpaid rent, and $383,621 for attorneys' fees. The total amount of the judgment was $1,342,674.

■ The award for unpaid rent ($546,805) equalled the full amount of rent West claimed against H.S.M. for the alleged five-year extension of the lease from December 31, 1988 to December 31, 1993. At the time of the settlement, H.S.M. had already obtained a ruling on its Motion for Partial Summary Judgment that "Marcella West take nothing against Defendant, HSM, … [f]or rents, taxes, insurance and any other charges accruing after December 31, 1988" and "[f]or damages to the Building after December 31, 1988." Thus, based on the court's ruling, H.S.M. had no potential liability for any unpaid rent or damages to the building occurring after December 31, 1988.

Moreover, we find the damages for unpaid rent to be especially unreasonable in light of the fact that neither West nor H.S.M. made an allowance for the $294,198.96 that appellees had already paid West to occupy the premises from January 1, 1989 to October 31, 1990. We conclude that West wanted to recover twice for the same rental period. We hold that H.S.M.'s settlement with West for $546,805 for unpaid rent was unreasonable and not made in good faith.

■ We find the award of $412,248 for repairs to the building to also be unreasonable. Appellees' settlement of $330,000 was for "among other things, the restoration of the leased premises to the condition required by West." Furthermore, at the hearing on West's motion to approve her settlement with appellees, William Powell, West's counsel, informed the bankruptcy court that the correct range of damages for restoration of the property was between $0 and $160,000. H.S.M. argues that the parties arrived at this estimate before appellees moved out and that further damage to the building occurred as a result of the move-out. H.S.M. argues that the award of $412,248 for repairs included H.S.M.'s potential liability for damages resulting from appellees' move-out in October 1990. However, the trial court had already ruled that H.S.M. was not liable for damages to the building occurring after December 31, 1988. Therefore, we hold that H.S.M.'s settlement with West for $412,248 in restoration costs was also unreasonable and not made in good faith.

■ We find the very terms of West's and H.S.M.'s agreed judgment to be collusive in nature. West agreed to keep the terms of the judgment confidential and not to file an abstract or other public notice of the judgment. West also agreed not to execute or enforce her judgment against H.S.M. West agreed to collect the judgment only from the proceeds of H.S.M.'s third-party indemnity action against appellees. H.S.M. agreed to actively pursue all claims against appellees, to be represented by an attorney designated by West, and to prosecute these claims in H.S.M.'s name. West also agreed to pay all attorneys' fees and litigation expenses arising from the prosecution of H.S.M.'s third-party claim. In return, H.S.M. would retain either

twenty percent of the gross proceeds recovered or the amount of attorneys' fees incurred in prosecuting the third-party action, whichever amount was less. The balance of any recovery would be paid to West. Thirty days after the judgment in the third-party action became final, West agreed to execute a full release of her judgment against H.S.M.

In *State Farm Fire & Casualty Co. v. Gandy*, 880 S.W.2d 129 (Tex.App.—Texarkana 1994, writ granted), the plaintiff and defendant entered into an agreed judgment which awarded plaintiff damages. However, plaintiff gave defendant a covenant not to execute on the judgment, and defendant in turn assigned to plaintiff all of his rights against a third party. The *Gandy* court stated:

> Allowing an assignee of the named judgment debtor in such a case to collect all or part of the judgment amount perpetrates a fraud on the court, because it bases the recovery on an untruth, i.e., that the judgment debtor may have to pay the judgment. Such a result should be against public policy, because it allows, as here, parties to take a sham judgment by agreement, without any trial or evidence concerning the merits, and then collect all or a part of that judgment from a third party. Allowing recovery in such a case encourages fraud and collusion and corrupts the judicial process by basing the recovery on a fiction.... [T]he courts are being used to perpetrate and fund an untruth....

*Gandy*, 880 S.W.2d at 138 (citations omitted) (footnote omitted); *see also Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex.1992) (supreme court held "Mary Carter agreements" are void as against public policy because they are "partial settlements that promote rather than discourage further litigation," and they "promote unethical collusion among nominal adversaries").

We hold that the agreed judgment between H.S.M. and West was executed in bad faith and is against public policy. Public policy favors reducing litigation and properly aligning adverse parties. H.S.M.'s settlement with West failed to achieve these goals. Instead of reducing litigation, the settlement prolonged and confused the litigation. Rather than encouraging settlement, H.S.M.'s and West's actions did just the opposite. Even though appellees settled with West, they are still subject to liability to West via the present third-party action. West is essentially pursuing the present claim against appellees albeit the action is brought in H.S.M.'s name pursuant to the agreement. We conclude that the agreed judgment increased the complexity of the litigation, unduly distorted the posture of the litigation, and misaligned the parties by placing H.S.M. on the same side as West.

H.S.M. submitted its lead attorney's affidavit as summary judgment evidence that its settlement with West was reasonable, prudent, and made in good faith. B. Edward Williamson stated that he made several demands of appellees to defend H.S.M. but that they refused to defend and denied H.S.M.'s right to indemnification. Faced with potential liability, a lengthy trial and appellate process, and legal fees in excess of $130,000.00, H.S.M. settled with West. Consequently, Williamson opined that in entering into the settlement agreement, the representatives of H.S.M. "acted reasonably, prudently and in good faith under the circumstances, given the actual and potential liability and expense that H.S.M. faced with respect to the suit."

Affidavits are competent summary judgment evidence if they are made on personal knowledge, set forth facts as would be admissible in evidence and show affirmatively that the affiant is competent to testify to the matters stated therein. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984). However, testimony comprised only of legal conclusions is insufficient to support summary judgment as a matter of law. *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex.1984); *Hidalgo v. Surety Sav. & Loan Ass'n*, 487 S.W.2d 702, 703 (Tex.1972) (per curiam). Likewise, conclusory statements made by an expert witness are insufficient to support summary judgment. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991).

Indulging all inferences in favor of H.S.M., at most the affidavit shows that H.S.M.'s representatives acted in good faith in settling given its potential liability to West and its

rising legal expenses. However, such a showing does not fulfill H.S.M.'s burden since H.S.M. also had to prove that the settlement was reasonable and not just that the actions of its representatives were in good faith. *See Aerospatiale Helicopter,* 778 S.W.2d at 500. Williamson made no statements regarding the reasonableness of the amount H.S.M., the indemnitee, had to pay. Thus, Williamson's affidavit failed to raise a material fact issue to controvert appellees' entitlement to summary judgment on H.S.M.'s breach of contract claim for indemnification.

Because the summary judgment on H.S.M.'s indemnity claims can be affirmed on the basis that H.S.M.'s settlement with West was not reasonable, prudent, or made in good faith, we need not address whether the remaining grounds are insufficient to support summary judgment. *Rogers,* 772 S.W.2d at 79; *Garcia,* 867 S.W.2d at 411.

H.S.M. further contends that in granting summary judgment, the "trial court apparently ignored factual issues relating to H.S.M.'s breach of contract allegations that were unrelated to the indemnity clauses." That is, the trial court may have disposed of H.S.M.'s breach of contract claim on the basis of indemnification, but that other bases for its breach of contract claim still remain.

A review of H.S.M.'s first amended third-party petition shows that H.S.M.'s causes of action consist of tortious interference and breach of contract for failure to indemnify. Under its breach of contract claim, H.S.M. alleged that appellees were liable for all rentals after December 31, 1988. We have already discussed H.S.M.'s indemnification and rental claims. We hold that no material fact issues remain, and that appellees are entitled to summary judgment on the breach of contract claim.

## Tortious Interference

We now consider whether the trial court erred in granting summary judgment on the tortious interference claim. In its petition, H.S.M. alleged that:

Chester caused and/or participated in causing the other Third–Party Defendants to breach the lease agreement. Chester's conduct constitutes tortious interference with the existing contractual rights of H.S.M.....

H.S.M. did not specify what Chester did to tortiously interfere with its contractual rights. The other third-party defendants referred to in H.S.M.'s petition are Keystone–PA, Koppers, and Koppers–Sub. Chester argues that any interference was justified as a matter of law because Keystone–PA is its subsidiary and its financial interest in the sublease is superior to that of Koppers and Koppers–Sub.

We first examine the parent-subsidiary relationship. An important element in a right of recovery for contract interference is that the interference must be without right or justification. *Black Lake Pipe Line Co. v. Union Constr. Co.,* 538 S.W.2d 80, 91 (Tex. 1976) *(overruled on other grounds,* 767 S.W.2d 686 (Tex.1989)). The Fifth Circuit, applying Texas law, held that a parent and its subsidiary are so closely aligned in business interests as to render them, for tortious interference purposes, the same entity. *Deauville Corp. v. Federated Dep't Stores, Inc.,* 756 F.2d 1183, 1196 (5th Cir.1985). Thus, the court held that although the two were separate entities, neither could tortiously interfere with the other because their financial interests were identical; the parent controlled the subsidiary and its profits. *Id.* at 1196–1197; *see also American Medical Int'l, Inc. v. Giurintano,* 821 S.W.2d 331, 336 (Tex.App.—Houston [14th Dist.] 1991, no writ) (two parties cannot be held liable for interfering with each other because of the parent-subsidiary relationship). The *Giurintano* court was persuaded by the analysis in *Copperweld* even though *Copperweld* concerned the scope of the Sherman Antitrust Act and not the common law tort of tortious interference. *See Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). The Supreme Court looked to the nature of the underlying relationship and held that fully owned subsidiaries are incapable of conspiring with their parent as a matter of law because

[a] parent and its wholly owned subsidiary have a complete unity of interest. Their

objectives are common, not disparate.... With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder.... [I]n reality a parent and a wholly owned subsidiary *always* have a "unity of purpose or a common design." They share a common purpose whether or not the parent keeps a tight rein over the subsidiary; the parent may assert full control at any moment if the subsidiary fails to act in the parent's best interest.

*Copperweld,* 467 U.S. at 771, 104 S.Ct. at 2741–2742 (emphasis in original).

Chester's chairman and chief executive officer, Alfred Bailey, stated in his affidavit that Keystone–PA had been a wholly owned subsidiary of Chester since September 1988. H.S.M. acknowledged this fact in its motion for new trial. As such, Chester could not have tortiously interfered with Keystone–PA as a matter of law.

We next consider whether Chester's financial relationship with Koppers–Sub and its parent, Koppers, created a privilege which protected Chester from liability for tortious interference. In its motion for summary judgment and brief in support thereof, Chester argued only that any alleged interference was justified because Keystone–PA was its subsidiary. Chester made no arguments concerning its financial relationship with Koppers–Sub or Koppers. Because Chester did not expressly present this issue in its motion, we cannot consider it for the first time on appeal. Thus, summary judgment as to the tortious interference claim was improperly granted.

Having found that summary judgment was proper as to H.S.M.'s indemnity claim, we overrule that portion of H.S.M.'s second point of error. Having found that summary judgment was improperly granted on the tortious interference claim, we sustain that portion of H.S.M.'s second point of error.

Because our rulings on appellant's first and second points of error are dispositive of the appeal, we need not address appellant's remaining point. TEX.R.APP.P. 90(a).

We AFFIRM the trial court's summary judgment as to H.S.M.'s indemnity claim against appellees. We REVERSE the summary judgment as to H.S.M.'s tortious interference claim against Chester and REMAND that claim to the trial court for further proceedings.