

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00077-CV

Harry Oliver **WINKENHOWER**,
Appellant

v.

George Allan **SMITH**, Independent Executor of the Estate of Lyda Catherine Smith, Deceased,
Appellee

From the 198th Judicial District Court, Bandera County, Texas
Trial Court No. CV-14-0000018
Honorable M. Rex Emerson, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Jason Pulliam, Justice

Delivered and Filed:  November 10, 2015

AFFIRMED

Appellant and appellee own real property in Bandera County.  Appellee sued appellant seeking a partition of the property.  Appellant filed a counterclaim seeking to enforce an oral agreement to convey the property into a family trust.  Appellee filed a traditional and no-evidence motion for summary judgment on appellant's counterclaims, which the trial court granted.  The trial court later signed a Decree of Partition.  In this appeal, appellant asserts the trial court erred in sustaining appellee's objections to his summary judgment evidence and erred in rendering summary judgment on his counterclaims.  We affirm.

**BACKGROUND**

In 1959, Harry Oliver Winkenhower, Sr. and Mary Emma Winkenhower purchased real property, which the family referred to as the "Medina Ranch." Harry Sr. and Mary had two children: Harry Oliver Winkenhower, Jr. (hereinafter, "appellant") and Lyda Catherine (Winkenhower) Smith (her estate is the appellee here). Harry Sr. died in 1970. According to appellant, his mother expressed her desire to have the ranch remain as a single property and only "bloodline family members" would have any claim to the ranch.

Mary died on January 5, 2005. In Mary's will, which was not probated, Mary "devise[d], bequeath[ed] and appoint[ed] all of [her] property and estate of whatever nature and wherever located to [her] two children [Lyda and Harry Jr.] share and share alike." No specific real or personal property was mentioned in the will, nor did the will mention Mary's wishes about the ranch. Although Mary's will was not probated, as a result of her death, both children received an undivided interest in Mary's house in San Antonio and the Medina Ranch.

According to appellant, in 2007, he, Lyda, and their families began discussing placing the Medina Ranch into what their deceased mother referred to as a "bloodline trust." Appellant contends Lyda and her husband were involved in these discussions and, at the time, acted consistently with the mother's wish. Appellant contends the formation of a trust and an agreement as to its terms were finalized in April 2011 when family members met in San Antonio to discuss the following family business matters: (1) a disputed balance on a personal loan made by Lyda's family to appellant's family during the time appellant's family cared for Mary and (2) the issue of honoring Mary's wish concerning the ultimate disposition of the Medina Ranch.

Appellant contends that at this meeting, he and Lyda agreed that if appellant conveyed his undivided one-half interest in their mother's home to Lyda, then Lyda would forgive the

indebtedness owed to her and she would contribute her interest in the ranch to the soon-to-be-created trust. Appellant also agreed to contribute his interest in the ranch to the trust.

The following agreement was reduced to writing and signed by both appellant and his wife on April 21, 2011:

> To whom it may concern:
>
> I [appellant] do relinquish my half of 310 Woodway Forest, San Antonio, TX willed to us by our mother, Mary E. Winkenhower to my sister Lyda Cay Smith and her husband George A. (Hank) Smith in lieu of debt.

Lyda died on June 20, 2011, and her husband, George Allan Smith, is the independent executor of her estate (hereinafter, "appellee"). On October 16, 2012, appellant and his wife signed a General Warranty Deed conveying his interest in their mother's house to appellee as executor of Lyda's estate. The alleged agreement to establish a trust was not reduced to writing, and no trust was ever created.

Appellee filed the petition for partition on January 21, 2014. In response, appellant filed his answer and counterclaim for breach of an oral contract. In his answer/counterclaim, appellant alleged appellee breached the oral contract under which appellant would exchange his share of his mother's house for Lyda agreeing to contribute her share of the ranch to the trust, with him also contributing his share in the ranch to the trust.

Appellee filed an answer to the counterclaim, raising the affirmative defenses of statute of frauds, statute of limitations, and failure of consideration. On July 16, 2014, appellee filed a traditional and no-evidence motion for summary judgment on appellant's breach of contract counterclaim, arguing (1) there is no writing evidencing an agreement about conveying the ranch to a bloodline trust; therefore, the alleged oral contract violates the statute of frauds; (2) the partial performance exception to the statute of frauds does not apply; (3) a valid enforceable oral contract

was never formed; and (4) if a valid oral contract exists, there is no evidence of breach causing appellant damages.

On August 25, 2014, appellant filed an amended answer and counterclaim, in which he alleged Lyda, appellee, appellant, and appellant's wife and three children all met at their deceased mother's San Antonio house in April 2011, at which time the family "agreed that [appellant] would exchange his share of his mother's home in San Antonio for [Lyda] agreeing to contribute her share of the 198 acres in Bandera County to a blood line [sic] trust, along with [appellant] matching said contribution." Appellant further alleged he performed under the oral agreement by conveying his interest in the house to appellee as Lyda's executor in October 2012. Appellant alleged he received no share of the proceeds of the October 2012 sale of the house "which was consistent with the oral agreement between [appellant] and [Lyda]." As a breach of contract, appellant contended appellee, having realized the benefit of the oral agreement, "does not want to honor the remaining portion of the oral agreement to be performed — his contributing [Lyda's] half of the ranch in Bandera to a bloodline trust." In addition to breach of contract, appellant pled fraud in connection with the agreement to exchange his interest in his mother's house for his sister contributing her interest in the ranch to a trust. Finally, appellant raised partial performance and quasi estoppel as exceptions to the statute of frauds.

The trial court signed orders sustaining and denying various objections by both parties to each other's summary judgment evidence. The trial court later signed an Order on [Appellee's] Traditional and No Evidence Motion for Summary Judgment on [Appellant's] Counterclaims, stating "after consideration of the merits and the arguments and authorities of counsel, [the court] GRANTS the [appellee's] Motion for Summary Judgment as to . . . [appellant's] counterclaims of partial performance, fraud, and quasi estoppel."

**STANDARD OF REVIEW**

In this case, appellee moved for a traditional summary judgment on the affirmative defense of statute of frauds and on appellant's breach of contract claim. Appellee also moved for a no-evidence summary judgment on the breach of contract claim. Because the statute of frauds defense is dispositive, we address only whether appellee was entitled to a traditional summary judgment on its affirmative defense.

We review a summary judgment de novo. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party moving for traditional summary judgment has the burden of establishing that no material fact issue exists and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In reviewing the granting of a traditional summary judgment, we consider all the evidence in the light most favorable to the non-movant, indulging all reasonable inferences in favor of the non-movant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). We determine whether the movant proved there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Id.*

**EVIDENTIARY RULINGS**

The trial court signed orders sustaining and denying various objections by both parties to each other's summary judgment evidence. Although appellant challenges these rulings in his final issue on appeal, an appellate court must consider the record as it existed at the time the summary judgment was rendered. TEX. R. CIV. P. 166a(c); *KENS-TV, Inc. v. Farias*, 04-07-00170-CV, 2007 WL 2253502, at *2 (Tex. App.—San Antonio Aug. 8, 2007, pet. denied) (mem. op.); *H.S.M. Acquisitions, Inc. v. West*, 917 S.W.2d 872, 878 (Tex. App.—Corpus Christi 1996, writ denied). Therefore, we may not consider struck portions of the record because such evidence is not a part of the summary judgment record. *See Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 898 n.2 (Tex. App.—Austin 2010, no pet.); *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 294 (Tex.

App.—Dallas 2009, no pet.). Therefore, we address this challenge first because appellant relies on his summary judgment evidence, portions of which the trial court struck, as support for his argument that the statute of frauds does not apply to bar enforcement of the alleged oral contract.

We review a trial court's ruling on an objection to summary judgment evidence for an abuse of discretion. *In re Estate of Denman*, 362 S.W.3d 134, 140 (Tex. App.—San Antonio 2011, no pet.).

Appellant submitted his affidavit and the affidavits of his family members. The trial court sustained appellee's hearsay, conclusory statements, and improper legal conclusion objections to the contents of the affidavits. The objections pertained to statements contained in the affidavits wherein the affiant attested to what another person said about putting the ranch into a "bloodline trust" or the reasons behind appellant conveying his interest in his mother's house. "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f). An affidavit containing hearsay is objectionable and does not raise a fact issue to defeat a summary judgment motion if proper objection is made. *See Querner Truck Lines, Inc. v. Alta Verde Indus., Inc.*, 747 S.W.2d 464, 468 (Tex. App.—San Antonio 1988, no writ). Hearsay is an out of court statement, other than one made by the declarant, offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is generally inadmissible. *Id.* at 802.

On appeal, appellant asserts the testimony contained in the affidavits is based on the affiant's personal knowledge from which any opinion was drawn, was rationally based on the affiant's perceptions, and is helpful to a clear understanding of the affiant's testimony. Appellant contends the trial court erred in sustaining the hearsay objections because the testimony of the

affiants falls into a hearsay exception for "then existing state of mind" under Texas Rule of Evidence 803(3).

Rule 803(3) provides that the following is excluded for the rule against hearsay: "A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." TEX. R. EVID. 803(3). Statements admitted under this exception are usually spontaneous remarks about pain or some other sensation, not readily observable by a third party, which the declarant makes when he experiences the sensation. *James v. Tex. Dep't of Human Servs.*, 836 S.W.2d 236, 243 (Tex. App.—Texarkana 1992, no writ); *see also Ochs v. Martinez*, 789 S.W.2d 949, 959 (Tex. App.—San Antonio 1990, writ denied). The exception does not extend to statements of past external facts or conditions. *Id.* In this case, the affiants' testimony does not fall within this exception because they are statements of past external facts—that Lyda allegedly agreed to transfer her interest in the ranch into a trust or that Lyda and/or appellee allegedly agreed appellant would convey his interest in the mother's house in exchange for the ranch being placed into a trust.

Appellant also submitted, as an attachment to Christie Haby's affidavit, an email Christie alleged she "received from [appellee] outlining the terms of the exchange or [sic] property interests and what assets would be placed in the bloodline trust, dated March 23, 2007." The trial court sustained appellee's objection and struck the email in its entirety on the grounds that the email was unauthenticated and unverified. On appeal, appellant does not challenge the trial court's sustaining this objection.

We conclude that to the extent appellant offered statements made in the affidavits to prove the truth of the matters asserted—that is, to prove that Lyda agreed appellant should convey his

interest in his mother's house to her in exchange for Lyda transferring her interest in the ranch to a trust, that Lyda and/or appellee would begin working on the terms of a trust, or that any agreement was finalized—the trial court did not err in ruling the statements to be inadmissible hearsay. Therefore, this testimony is not part of the summary judgment record and we do not consider it on appeal. We next consider appellant's assertion that the trial court erred in rendering summary judgment in favor of appellee based on the statute of frauds.

## STATUTE OF FRAUDS

"A [contract for the sale of real estate] is not enforceable unless the promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him." TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(4) (West 2015). "The party pleading the statute of frauds bears the initial burden of establishing its applicability."[1] *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013). "Once that party meets its initial burden, the burden shifts to the opposing party to establish an exception that would take the verbal contract out of the statute of frauds." *Id.* "Whether a contract comes within the statute of frauds is a question of law, which we review de novo." *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 426 (Tex. 2015). "However, whether the circumstances of a particular case fall within an exception to the statute of frauds is generally a question of fact." *Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 192 (Tex. App.—Dallas 2013, pet. denied).

In the context of a summary judgment proceeding, because appellee moved for a traditional summary judgment on its affirmative defense of statute of frauds, appellee bore the summary judgment burden to conclusively establish that the defense applied. *Kalmus v. Oliver*, 390 S.W.3d

---

[1] Statute of frauds is an affirmative defense to a breach of contract claim. TEX. R. CIV. P. 94.

586, 589 (Tex. App.—Dallas 2012, no pet.). On appeal, appellant does not contend appellee did not satisfy his burden of showing the statute of frauds applied because the oral contract to transfer the Medina Ranch to a "bloodline trust" was not in writing. Instead, appellant raised two exceptions to application of the statute of frauds: partial performance and quasi estoppel. Once appellee established the applicability of the statute of frauds, the burden shifted to appellant to show why summary judgment should not be granted by raising a fact issue on these exceptions. *See Kalmus*, 390 S.W.3d at 589. In other words, appellee did not have the additional burden to negate appellant's claim of partial performance or quasi estoppel. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936-37 (Tex. 1972); *Saucedo v. Rheem Mfg. Co.*, 974 S.W.2d 117, 125 (Tex. App.—San Antonio 1998, pet. denied). Instead, the burden rested with appellant. *"Moore" Burger, Inc.*, 492 S.W.2d at 936-37; *Saucedo*, 974 S.W.2d at 125.

## A. Partial Performance

In his response to appellee's motion for summary judgment and on appeal, appellant asserted the partial performance exception to the statute of frauds applies because he paid consideration by signing the warranty deed, he surrendered possession of and title to his mother's home when he signed the deed; and he made improvements to the ranch and if the oral agreement is not enforced it would create a fraud on appellant.

Partial performance will operate to exempt an oral contract for the sale or transfer of real property from the statute of frauds. *Boyert v. Tauber*, 834 S.W.2d 60, 63 (Tex. 1992). Also, "equity may enforce an otherwise unenforceable oral agreement when nonenforcement of the agreement would itself amount to fraud." *See Dodson v. Kung*, 717 S.W.2d 385, 388 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). "The fraud arises when there is strong evidence establishing the existence of an agreement and its terms, the party acting in reliance on the contract has suffered a substantial detriment for which he has no adequate remedy, and the other party, if

permitted to plead the statute, would reap an unearned benefit." *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied).

"The partial performance must be unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." *Berryman's S. Fork, Inc.*, 418 S.W.3d at 193; *see also Breezevale Ltd.*, 82 S.W.3d at 439. The performance a party relies on to remove a parol agreement from the statute of frauds "must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced." *Breezevale Ltd.*, 82 S.W.3d at 439-40. Without such precision, the acts of performance do not tend to prove the existence of the parol agreement sought to be enforced. *Id.* at 440.

"Whether the performance was 'unequivocally referable' is generally a question of fact." *Vermont Info. Processing, Inc. v. Montana Beverage Corp.*, 227 S.W.3d 846, 853 (Tex. App.—El Paso 2007, no pet.). "In addition, whether the performance that has occurred is sufficient to establish the exception is a question of fact." *Id.* at 854; *see also Bookout v. Bookout*, 165 S.W.3d 904, 910 (Tex. App.—Texarkana 2005, no pet.).

The premise of appellant's argument is that (1) he and his sister reached an oral agreement to transfer their interests in the ranch into a trust in exchange for him signing the warranty deed and surrendering possession of and title to his mother's home to appellee, (2) he performed under the contract, and (3) appellee breached the oral agreement by suing for partition rather than transferring Lyda's interest in the ranch into a trust. We must decide whether there is evidence in the remaining portions of the summary judgment record, after the trial court sustained appellee's objections, to raise a genuine issue of material fact on the issue of partial performance. As summary judgment proof that he performed under the alleged oral contract, appellant submitted a copy of the warranty deed, his own affidavit listing various improvements he had made to the ranch, and the affidavits of his family members.

As summary judgment proof evidencing his performance under the oral contract, appellant submitted the warranty deed, which evidences his conveyance of his interest in his mother's house to appellee. However, the deed itself makes no mention of the purpose behind the conveyance, nor does it mention the ranch or any trust to be created to hold the ranch. The only written document specifically stating the purpose of the conveyance was signed by both appellant and his wife on April 21, 2011 and states: "I [appellant] do relinquish my half of 310 Woodway Forest, San Antonio, TX willed to us by our mother, Mary E. Winkenhower to my sister Lyda Cay Smith and her husband George A. (Hank) Smith in lieu of debt." This document specifically states the purpose of the transfer was "in lieu of debt," and does not mention the ranch or any trust to be created to hold the ranch. As further evidence of the purpose behind appellant's conveyance of his interest in his mother's house, appellee signed a "Release of Debt" on October 16, 2012 that identifies appellant as the "debtor" and appellee as "creditor," and states as follows:

> Amount: All amounts owed by debtor to creditor through April 21, 2011.
>
> Consideration: Conveyance of debtor's undivided interest in real property [further described as the mother's house].
>
> Creditor acknowledges satisfaction of the debt and executes this agreement in order to effectuate a discharge of the referenced indebtedness.

Like the April 21, 2011 document, the "Release of Debt" makes no reference to the ranch or any trust to be created.

We conclude the warranty deed—standing alone—does not raise a fact issue on partial performance. In addition, neither the April 21, 2011 document nor the Release of Debt—either standing alone or together—raise a fact issue on partial performance. However, appellant also appears to argue that the deed in conjunction with various affidavits create a fact issue.

The trial court sustained appellee's objection to any attempt by appellant to change the terms of the April 21, 2011 contract by parol evidence. On appeal, appellee asserts appellant is

attempting to modify the April 2011 document by adding terms to it (via inadmissible parol evidence) to show the April 2011 document was entered into for two purposes: "in lieu of debt" and in exchange for Lyda transferring her interest in the ranch into a trust. On appeal, appellant argues he is not attempting to modify the April 2011 document. Instead, he contends his summary judgment evidence and emails from appellee demonstrate a mutual agreement to create the trust.

As stated above, we conclude the trial court did not abuse its discretion in sustaining appellee's hearsay objections to statements made in the affidavits submitted by appellant that concerned what Lyda and appellee may have said, done, or agreed to do. Therefore, we do not consider these struck portions of the record because such evidence is not a part of the summary judgment record. *See Trudy's Tex. Star*, 307 S.W.3d at 898 n.2; *Esty*, 298 S.W.3d at 294. Accordingly, we cannot consider whether the affidavits raise a fact issue on partial performance.

To the extent appellant relies on the work he did at the ranch to raise a fact issue that he performed under the alleged oral contract, appellant relies on the factors set forth in *Boyert* that establish an oral contract for the purchase of real property is sufficiently corroborated and enforceable if the purchaser: "(1) pays the consideration; (2) takes possession of the property; and (3) makes permanent and valuable improvements on the property with the consent of the seller, or, without such improvements, other facts are shown that would make the transaction a fraud on the purchaser if the oral contract were not enforced." *Boyert*, 834 S.W.2d at 63. As set forth in *Boyert*, these steps provide sufficient evidence of an agreement because they provide affirmative corroboration by both parties to the agreement. *Id.*

Appellant asserts: (1) he paid consideration by surrendering his mother's house to appellee; and (2) he made improvements to the ranch. We do not believe these steps provide sufficient evidence of an agreement regarding Lyda transferring her interest in the ranch into a trust because they do not provide affirmative corroboration by both parties to the alleged oral agreement. The

*Boyert* factors apply when a party attempts to enforce an oral contract to purchase real property. That is not the case here. Here, appellant does not argue there was an oral agreement to purchase the ranch. Instead, he argues the oral agreement was for Lyda and him to convey their respective interests in the ranch to a soon-to-be-created trust. Under these circumstances, we hold appellant's reliance on *Boyert* is misplaced.

Even if we assume the parties entered into an oral contract to create a "bloodline trust," such an oral contract violates the statute of frauds and is unenforceable unless an exception to the statute applies. However, viewing the evidence in the summary judgment record that was before the trial court, after the court struck portions of the affidavits, in the light most favorable to appellant (as the non-movant), we do not believe appellant raised a genuine issue of material fact on the issue of partial performance. Therefore, we conclude the partial performance exception to the statute of frauds does not apply.

## B.    Quasi Estoppel

In his answer/counterclaim, appellant asserted he fully performed under the oral agreement when he signed the deed conveying his interest in his deceased mother's home in San Antonio. As a result, appellant argues, appellee is estopped from denying the oral agreement, having received the full benefit of appellant's performance.

Under the general doctrine of quasi-estoppel, a party is precluded from asserting to another's disadvantage, a right that is inconsistent with a position previously taken. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). The doctrine applies when it would be unconscionable to allow a party to maintain a position to which he acquiesced or from which he accepted a benefit. *Id.*

On appeal, appellant again relies on the affidavits and copies of emails as summary judgment proof that his relinquishment of his interest in his mother's house was consideration for

both the debt he owed to Lyda and for Lyda conveying her interest in the ranch into a trust. For the same reasons stated above, we do not consider struck portions of the record because such evidence is not a part of the summary judgment record. *See Trudy's Tex. Star*, 307 S.W.3d at 898 n.2; *Esty*, 298 S.W.3d at 294. Accordingly, we cannot consider whether the affidavits or the email raise a fact issue on quasi estoppel.

Viewing the evidence in the summary judgment record that was before the trial court in the light most favorable to appellant (as the non-movant), we do not believe appellant raised a genuine issue of material fact on the issue of quasi estoppel. Therefore, we conclude the quasi estoppel exception to the statute of frauds does not apply.

## C.      Conclusion

For the reasons stated above, we conclude appellee established his entitlement to a traditional summary judgment on appellant's partial performance and quasi estoppel defenses to the application of the statute of frauds. Therefore, the statute of frauds applies to bar enforcement of any alleged oral agreement.

## FRAUD

On appeal, appellant does not challenge the trial court's rendering a summary judgment in favor of appellee on appellant's fraud claim. Therefore, he has waived any challenge to the summary judgment related to this cause of action. Accordingly, we are required to uphold the portion of the trial court's summary judgment order as it applies to the fraud cause of action. *See Ramirez v. First Liberty Ins. Corp.*, 458 S.W.3d 568, 572 (Tex. App.—El Paso 2014, no pet.).

## CONCLUSION

We overrule appellant's issues on appeal, and affirm the trial court's summary judgment in favor of appellee.

Sandee Bryan Marion, Chief Justice