NUMBER 13-98-661-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


AURELIO IBARRA MENDEZ, TOMAS PADILLA,

TERESA PADILLA, AND GUILLERMINA RUIZ, Appellants,


v.



SAN BENITO/CAMERON COUNTY DRAINAGE

DISTRICT NO. 3, Appellee.

____________________________________________________________________


On appeal from the 103rd District Court of Cameron

County, Texas.

____________________________________________________________________


O P I N I O N




Before Justices Hinojosa, Yañez, and Seerden(1)


Opinion by Justice Hinojosa



 Appellants, Aurelio Ibarra Mendez, Tomas Padilla, Teresa Padilla,
and Guillermina Ruiz, sued appellee, San Benito/Cameron County
Drainage District No. 3, for negligence, gross negligence, negligence per
se, nuisance, and inverse condemnation. Appellee moved for summary
judgment, and the trial court granted the motion. By five issues,
appellants contend the trial court erred in denying their motion to
reconsider the granting of appellee's motion for summary judgment. 
We affirm.

A. Background and Procedural History


 On April 5, 1991, an extremely heavy rain fell in San Benito and
flooded the La Palma subdivision.(2) The flooding affected approximately
700 individuals with homes and businesses in the area.

1. The Lawsuit


 On April 15, 1991, ten plaintiffs filed suit against Missouri Pacific
Railroad Company ("MOPAC") and Central Power & Light Company
("CP&L") alleging that they had:


 suffered extensive damages to their property by reason of
rising water. The occurrence of the rising water was due to
the negligent conduct of the Defendants by diminishing the
carrying capacity of a drainage ditch by placing it, or causing
it to be placed underground, and erecting a barrier in the
drainage ditch, which drainage ditch had been constructed
and was designed to drain rain water from the areas in
question. By negligently obstructing the drainage ditch, the
flow of rainwater was impeded, causing it to rise and flood
the areas in question, thereby proximately causing extensive
and permanent damage to the Plaintiffs. 

Appellant, Tomas Padilla, was one of the ten original plaintiffs. 
Appellants, Aurelio Ibarra Mendez, Teresa Padilla, and Guillermina Ruiz,
subsequently intervened in the lawsuit. At one time, there were over
600 plaintiffs and intervenors in the case. We will refer to the
plaintiffs/intervenors as the "residents."

 In amended pleadings, the residents alleged:

 The Railroad built a raised railroad bed and then the Railroad
filled in and obstructed the primary drainage ditch which
drains the area south of the railroad track near [the
residents'] properties in San Benito, Texas. CP&L altered its
property near [the residents'] properties so as to divert or
impound the natural flow of surface waters and permitted a
diversion or impounding to continue in a manner which
proximately caused damages to the properties of [the
residents]. . . .


The residents further alleged that "MOPAC constructed a raised
roadbed which acted as a dam and did not provide the necessary
culverts and sluices required to drain the area south of its tract in San
Benito, Texas."

 In 1993, the Drainage District was added as a defendant. The
residents alleged that the Drainage District had constructed and
maintained drainage ditches and other permanent structures for
drainage purposes near the properties in question, and as a result of the
configuration of the drainage ditches and other permanent structures
which the Drainage District had constructed, the properties were
flooded on April 5, 1991. Pursuant to section 11.086 of the Texas
Water Code, the residents claimed that they were "damaged by the
conduct of Defendants in altering the natural flow and diverting and
impounding surface waters near their homes and properties." The
residents further asserted that "the Drainage District was negligent in
the maintenance and cleaning of its drainage ditches and other
permanent structures [and] negligent in permitting CP&L to alter the
flow to the natural drain ditches and other permanent structures, and
such negligence was one of the proximate cause[s] of the flooding
conditions in question . . . ." The residents contended that the Drainage
District's acts constituted a taking, nuisance, negligence, gross
negligence, and negligence per se.

 The Drainage District generally denied the residents' allegations
and asserted as affirmative defenses: (1) sovereign immunity; (2) the
Texas Tort Claims Act (TTCA) did not allow the residents to sue for their
claims; (3) the residents' alleged injuries and damages were caused by
the negligence of a party over whom the Drainage District did not
exercise control; and (4) the alleged injuries and damages were caused
by an Act of God or unavoidable accident.

 In their amended petition, the residents alleged the following:

(1) Negligence

(a) The Drainage District was negligent by allowing
MOPAC to replace a trestle bridge with a raised railroad
bed without proper permits and allowed them to fill in
and obstruct the primary drainage ditch which drains
the area south of the railroad track near [the residents']
properties.





(b) The Drainage District failed to take corrective action
against the negligent conduct of the railroad, thus it
failed to exercise reasonable care.

(c) The Drainage District failed to properly clean and
maintain the drainage ditches.

(d) The Drainage District failed to apply the correct
standard of care required for engineers designing or
redesigning a bridge crossing, and to require the
railroad to adhere to existing engineering standards of
care upstream and downstream.

(e) The Drainage District failed to order the railroad to
remove struts and to build proper sluices which were
causing the retardation and backflow of the natural
flow of surface waters.

(f) The Drainage District was negligent in allowing
MOPAC and CP&L to build without permits, proper
engineering standards, and a proper bridge design.

(g) The Drainage District failed to act when notified by the
railroad that they were relying on CP&L's incorrect
standard of care downstream.


(2) Negligence Per Se

 [The residents] were damaged by the conduct of
Defendants in altering the natural flow and diverting and
impounding surface waters near their homes and properties
in violation of Texas Water Code section 11.086;(3) Texas
Revised Civil Statutes articles 6320,(4) 6325,(5) 6328;(6) and
Texas Water Code sections 56.115,(7) 56.116,(8) 56.117,(9)
56.119,(10) 56.121,(11) 56.133,(12) and 56.134.(13)



 The Drainage District failed to control, supervise and
maintain all improvements referred to in this petition and
failed to keep them in repair.


(3) Gross Negligence

 The Drainage District's actions constituted gross
negligence in that the same was performed without any
appropriate engineering and with knowledge that damage to
property owners was highly likely and with apparent
absence of concern for the rights and welfare of such
property owners.


(4) Strict Liability

 Defendants have an absolute duty to prevent the
occurrence of flooding.


(5) Nuisance

 The design defect at the bridge is a nuisance.


(6) Nuisance per se

 The City of San Benito failed to supervise the Drainage
District and to keep the city in the proper state for the safety
and welfare of the people.


(7) Inverse Condemnation

 Defendants, except the Drainage District, have
inversely condemned [the residents'] land for use of storage
of water due to embankment created in E-drain when the
trestle bridge was replaced.


(8) Res Ipsa Loquitur

 But for the negligence of defendants, the flood would
not have occurred.


(9) Texas Tort Claims Act (in the alternative)

 [The residents] contend that the City and Drainage
District are performing proprietary functions in draining the
surface waters.


2. Drainage District's Motions for Summary Judgment


 The Drainage District subsequently filed a motion for summary
judgment.(14) The Drainage District asserted that: (1) as a matter of law,
all of the residents' damages were caused by an act of God; (2) it is not
liable for the performance of, or failure to perform, discretionary acts; (3)
it is not liable for the residents' property damages because the damages
were not caused by a Drainage District employee's operation of a motor
vehicle or motor-driven equipment; (4) the residents' property damages
did not constitute a taking by inverse condemnation because the flood
was a unique occurrence, not an inevitable recurring flood; and (5) there
is no nuisance cause of action in this case. The Drainage District relied
upon its pleadings, the orders of the trial court, the deposition of John
James Lynn, which included records from the National Weather Service
and National Oceanic and Atmospheric Administration, and the opinion
of this Court in Juan Torres, et. al. v. Harlingen Irrigation District, No.
13-93-193-CV (Tex. App.--Corpus Christi Dec. 29, 1994, no writ) (not
designated for publication).(15) The National Weather Service recorded
18.05 inches of rainfall in a 12-hour period on April 5, 1991. The
National Oceanic and Atmospheric Administration recorded 13.96
inches of rainfall in San Benito on that date. This represented the
heaviest rainfall recorded in San Benito in one day since before 1953.

 On January 16, 1997, the trial court granted a partial summary
judgment on the issues of nuisance and inverse condemnation. The
court refused to grant summary judgment on the issue of negligence of
the Drainage District in "maintaining its drain free of debris and
allowing the railroad to alter the drainage design under the railroad
without allowing for proper drainage," because the court concluded
that the TTCA waived immunity "for the use of property, [and] the issue
here is the manner in which the water district used or maintained its
property."

 On June 27, 1997, the Drainage District filed a "Renewed Motion
for Summary Judgment." We will refer to this motion as the district's
second motion for summary judgment. In the motion, the district urged
the trial court to reconsider the arguments it had presented in its
original motion for summary judgment and further argued that
"sovereign immunity has not been waived for the property damage
alleged by [the residents] . . . pursuant to the [TTCA]." Specifically, the
Drainage District asserted: (1) sovereign immunity is not waived by the
TTCA for property damage, unless it arises from the operation or use of
a motor-driven vehicle or motor-driven equipment, and (2) the
appellants' claims are barred because they did not provide notice to the
Drainage District within six months of the alleged damages as required
by the TTCA. The Drainage District did not submit any additional
summary judgment evidence. 

 In response, appellants objected to the Drainage District's second
motion for summary judgment, arguing that it failed to address all of
their claims and presented no new evidence. As summary judgment
evidence, appellants attached: (1) the affidavit of Manuel Montemayor,
a licensed engineer, which states that the railroad bridge fell below the
standard of care for proper drainage; (2) a letter from the Drainage
District to MOPAC in 1985 indicating a problem with Drain "E"; (3) the
minutes from a meeting in 1986 of the Drainage District's
commissioners, discussing the drains in the La Palma area; and (4) the
affidavit of Conrado Lozano, a civil engineer, which states that the E-Drain did not follow the proper practice of providing an overflow
channel over the pipes to handle the overflow in heavy rains. 
Appellants argued that they had amended their petition and that the
Drainage District's motion did not address these amended pleadings.

 The Drainage District responded that appellants' claims in the
amended petition ignored that MOPAC was a settling defendant and
CP&L was granted a summary judgment.(16) The Drainage District
argued that the allegations in the appellants' amended petition are
similar in substance to prior petitions.

 On April 14, 1998, the trial court granted the Drainage District's
second motion for summary judgment without specifying a reason. On
September 22, 1998, appellants asked the trial court to reconsider its
decision to grant the Drainage District's second motion for summary
judgment. The trial court denied appellants' request for reconsideration,
and granted the Drainage District's motion for severance. This appeal
ensued.

B. Issues Presented


 In five issues, appellants complain the trial court erred in denying
their motion to reconsider the Drainage District's second motion for
summary judgment.(17) Specifically, appellants contend the trial court
erred in granting the Drainage District's second motion for summary
judgment because: (1) the motion does not state any specific grounds
for summary judgment; (2) appellants' pleadings were adequate to
allege causes of action against the Drainage District; (3) the Drainage
District failed to prove all elements of the alleged lack of notice; (4) the
duty to control flood waters vests exclusively with the State of Texas
and its agencies; and (5) the Drainage District did not address all causes
of action in appellants' pleadings.

C. Standard of Review


 The proper inquiry on appeal is whether the defendant, in seeking
summary judgment, fulfilled its initial burden to: (1) establish as a
matter of law that there remains no genuine issue of material fact as to
one or more essential elements of the plaintiff's cause of action, or (2)
establish its affirmative defense to the plaintiff's cause of action as a
matter of law. Casso v. Brand, 776 S.W.2d 551, 556 (Tex. 1989);
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex.
1985); Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex. 1972). In deciding
whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the non-movant must be taken as true. 
Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 474 (Tex. 1995); Nixon,
690 S.W.2d at 549. Every reasonable inference must be indulged in
favor of the non-movant and any doubts resolved in his favor. Nixon,
690 S.W.2d at 549. Evidence favoring the movant's position will not be
considered unless it is uncontradicted. Great Am. Reserve Ins. Co. v.
San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). If
a summary judgment is granted generally, without specifying the
reason, it will be upheld if any ground in the motion for summary
judgment can be sustained. Carr v. Brasher, 776 S.W.2d 567, 569
(Tex. 1989); Weakly v. East, 900 S.W.2d 755, 758 (Tex. App.--Corpus
Christi 1995, writ denied).



D. Did the Order Granting the Second


Motion for Summary Judgment


Dispose of All Pending Issues?



 In their fifth issue, appellants contend the trial court erred in
granting the Drainage District's second motion for summary judgment
because it did not specifically address all causes of action alleged in
appellants' pleadings.

 This issue is of particular importance given the supreme court's
recent decision in Lehmann v. Har-Con Corp., 44 Tex. Sup. Ct. J. 364,
364 (Feb. 1, 2001), in which the court held that "in cases in which only
one final and appealable judgment can be rendered, a judgment issued
without a conventional trial is final for purposes of appeal if and only if
either it actually disposes of all claims and parties then before the court,
regardless of its language, or it states with unmistakable clarity that it
is a final judgment as to all claims and all parties." Id. A summary
judgment for a defendant disposing of the entire case is proper only if,
as a matter of law, the plaintiff cannot succeed on any theories pleaded. 
Havens v. Tomball Community Hosp., 793 S.W.2d 690, 691 (Tex.
App.--Houston [1st Dist.] 1990, writ denied). 

 Appellants do not contend that the trial court erred in granting the
original motion for summary judgment on the issues of nuisance and
inverse condemnation. Thus, appellants' only remaining claims are that
the Drainage District was negligent in its actions, and an implication of
waiver under the TTCA. The Drainage District's second motion for
summary judgment asserted that appellants had not established facts
which waived its sovereign immunity for the alleged property damage. 
We conclude that the second motion for summary judgment addressed
all of appellants' pending causes of action and is, therefore, a final and
appealable order. Appellants' fifth issue is overruled.

E. Was the Second Motion for Summary 


Judgment Sufficiently Specific?



 In their first issue, appellants complain that the trial court erred in
granting the Drainage District's second motion for summary judgment
because the motion does not state any specific grounds. Specifically,
appellants contend that because the Drainage District's motion asks the
court to "reconsider its first motion for summary judgment" it does not
state any specific grounds.

 The supreme court has held that the grounds for summary
judgment must be contained in the motion for summary judgment. 
McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex.
1993). A trial court has inherent authority to reconsider any
interlocutory order or judgment until the judgment becomes final. 
H.S.M. Acquisitions, Inc. v. West, 917 S.W.2d 872, 876-77 (Tex.
App.--Corpus Christi 1996, writ denied). A trial court may, in the
exercise of discretion, properly grant summary judgment after having
previously denied summary judgment without a motion by or prior
notice to the parties, as long as the court retains jurisdiction over the
case. Id. at 877. Thus, a trial court's action when it considers a party's
motion to reconsider the court's prior ruling on a motion for summary
judgment is within the court's discretion.

 Given that the trial court had already granted summary judgment
on the appellants' nuisance and inverse condemnation claims, the
Drainage District was required to address only the appellants' claims
that the district was negligent. While the Drainage District's second
motion for summary judgment asked the trial court to reconsider the
arguments the district had made in the original motion for summary
judgment, the motion specifically asserted that (1) the district was a
governmental unit covered by the TTCA, and (2) the residents had not
alleged facts to support a cause of action for property damage under the
Act. The Drainage District also asserted that appellants' claims were
barred because the appellants did not provide notice to the Drainage
District within six months of the alleged damages as required by the
TTCA. 

 We conclude the second motion for summary judgment states
specific grounds. Appellants' first issue is overruled.

F. Did the Drainage District Sufficiently Establish


its Entitlement to Sovereign Immunity?



 In their second issue, appellants contend the trial court erred in
granting the Drainage District's second motion for summary judgment
because their pleadings were adequate to allege causes of action
against the district. 

 Although appellants' discussion of this issue is not clear, we
conclude they are asserting that the motion for summary judgment
should not have been granted because the Drainage District did not
sufficiently establish its affirmative defense of sovereign immunity.

 Governmental units are generally immune from tort liability except
where that immunity has been specifically waived by the legislature. 
See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.025 (Vernon
1997). Section 101.021 of the Texas Civil Practice and Remedies Code
states that a governmental unit of the state, performing a governmental
function, is liable for property damage caused by one of its employees
acting within the scope of his employment only if: (1) the property
damage arises from the operation or use of a motor vehicle or motor-driven equipment; (2) the employee would be personally liable to the
claimant pursuant to Texas law; and (3) the governmental unit would
be liable to the claimant under Texas law if the unit were a private
entity. Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 1997).

 The Drainage District is a governmental unit as defined by the
TTCA. Tex. Civ. Prac. & Rem. Code Ann. § 101.001 (Vernon Supp.
2001); see also Bennett v. Brown County Water Improvement Dist. No.
1, 272 S.W.2d 498, 501 (Tex.1954) (drainage districts created under
statutes enacted under authority of the Constitution are "political
subdivisions of the state" of the same nature and stand on exactly the
same footing as counties or precincts, or any other political subdivisions
of the state). In order to prevail against a governmental entity entitled
to sovereign immunity, any negligence cause of action must fit within
the exceptions provided by section 101.021, or it fails as a matter of
law. See Tex. Civ. Prac. & Rem. Code Ann. 101.021 (Vernon 1997). 
Because appellants did not allege that their property damages arose
from the use of a motor vehicle or motor-driven equipment, they cannot
avail themselves of the TTCA's waiver of immunity for property
damage. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon
1997). Accordingly, we conclude the Drainage District is immune from
liability as a matter of law. Id. Appellants' second issue is overruled.

G. Duty to Control Flood Waters


 In their fourth issue, appellants contend the trial court erred in
granting the Drainage District's motion for summary judgment because
the duty to control flood waters vests exclusively with the State of
Texas and its agencies, including the Drainage District.

 While it is true that the State of Texas, and consequently the
Drainage District, has a duty to control flood waters, this does not
negate the fact that the Drainage District has governmental immunity
from liability. See Tex. Const. art. XVI, § 59;(18) Tex. Const. art. III, § 52;
Tex. Water Code Ann. § 56.011 (Vernon 1972); Bennett, 272 S.W.2d at
501; Peters v. Matagorda County Drainage Dist. No. 1, 146 S.W.2d 779,
780 (Tex. Civ. App.--Galveston 1940, writ ref'd).

 We hold the trial court did not err in granting the Drainage
District's second motion for summary judgment on the ground of
sovereign immunity. We overrule appellants' fourth issue.

H. Did the Drainage District Prove Lack of Notice? 


 In their third issue, appellants contend the trial court erred in
granting the Drainage District's motion for summary judgment because
the district failed to prove all elements of lack of notice.(19)

 The trial court granted the Drainage District's second motion for
summary judgment without specifying a reason. If a summary
judgment is granted generally, without specifying the reason, it will be
upheld if any ground in the motion for summary judgment can be
sustained. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989); Weakly
v. East, 900 S.W.2d 755, 758 (Tex. App.--Corpus Christi 1995, writ
denied).

 We have held the trial court did not err in granting the Drainage
District's second motion for summary judgment on the ground of
sovereign immunity. It is, therefore, unnecessary to address this issue. 
Tex. R. App. P. 47.1.

I. Conclusion


 We affirm the trial court's order denying appellants' motion to
reconsider the Drainage District's Renewed Motion for Summary
Judgment.


 FEDERICO G. HINOJOSA

 Justice



Publish. Tex. R. App. P. 47.3.


Opinion delivered and filed this the

12th day of April, 2001.

1. Retired Chief Justice Robert J. Seerden, assigned to this Court by the Chief
Justice of the Texas Supreme Court pursuant to Tex. Gov't Code Ann. § 74.003
(Vernon 1998).
2. It was estimated that the rainfall was 13 to 17 inches in a 24-hour period. 
Parts of San Benito remained flooded for two to four days.
3. Tex. Water Code Ann. § 11.086 (Vernon 2000) provides:


(a) No person may divert or impound the natural flow of surface
waters in this state, or permit a diversion or impounding by him
to continue, in a manner that damages the property of another by
the overflow of the water diverted or impounded.


(b) A person whose property is injured by an overflow of water
caused by an unlawful diversion or impounding has remedies at
law and in equity and may recover damages occasioned by the
overflow.


(c) The prohibition of Subsection (a) of this section does not in any
way affect the construction and maintenance of levees and other
improvements to control floods, overflows, and freshets in rivers,
creeks, and streams or the construction of canals for conveying
water for irrigation or other purposes authorized by this code. 
However, this subsection does not authorize any person to
construct a canal, lateral canal, or ditch that obstructs a river,
creek, bayou, gully, slough, ditch, or other well-defined natural
drainage.


(d) Where gullies or sloughs have cut away or intersected the banks
of a river or creek to allow floodwaters from the river or creek to
overflow the land nearby, the owner of the flooded land may fill
the mouth of the gullies or sloughs up to the height of the
adjoining banks of the river or creek without liability to other
property owners.
4. Tex. Rev. Civ. Stat. Ann. art. 6320 (Vernon 1926) provides:


Such corporation shall have the right to construct its road across, along,
or upon any stream of water, water course, street, highway, plank road,
turnpike, or canal when the route of said railway shall intersect or touch; 
but such corporation shall restore the stream, water course, street,
highway, plank road, turnpike, or canal thus intersected or touched, to
its former state, or to such state as not to unnecessarily impair its
usefulness, and shall keep such crossing in repair.
5. Tex. Rev. Civ. Stat. Ann. art. 6325 (Vernon 1926) provides:


Whenever any railroad company shall fail or refuse to comply with the
requirements of this chapter, after demand is made in accordance
therewith, such railway company shall pay to each person who made
such demand the sum of five hundred dollars for each month they shall
so fail or refuse to comply with such demand, the same to be recovered
by suit. 
6. Tex. Rev. Civ. Stat. Ann. art. 6328 (Vernon 1926) provides:


In no case shall any railroad company construct a roadbed without first
constructing the necessary culverts or sluices as the natural lay of the
land requires, for the necessary draining thereof.
7. Tex. Water Code Ann. § 56.115 (Vernon 1972) provides:


(a) The engineer shall make a map of the district showing:

 (1) the boundary lines of the district;

 (2) the original surveys within the boundaries of the district;
and

 (3) the number of acres in an original survey which are
included in the district if the boundary lines of the district
cross the original survey.


(b) The engineer shall make maps and profiles of the canals, drains,
ditches, and levees located in the district and their outlets
extending beyond the boundaries of the district.


(c) A copy of the land office map of the county which shows the
name and number of each survey and the area or number of acres
within the district is sufficient to comply with the requirement for
a map of the district, and any recognized map of a city or town in
the district is sufficient to comply with the requirement for a map
of that city or town.
8. Tex. Water Code Ann. § 56.116 (Vernon 1972) provides:


(a) The map and profile shall include the relation that each canal,
drain, ditch, or levee bears to each tract of land through which it
passes and the shape into which the canal, drain, ditch, or levee
divides each tract.


(b) If any canal, drain, ditch, or levee cuts off any tract containing less
than 20 acres of land, the map shall show:

 (1) the number of acres divided from the tract;

 (2) the number of acres in the whole tract;

 (3) the shape of the small tract; and

 (4) the relation of the small tract to the canal, ditch, drain, or
levee.


(c) The profile may show the number of cubic yards necessary to be
excavated to make each canal, drain, or ditch and to build any
levee located in the district and may give the estimated cost of
each.


(d) When the map, profile, and estimates are completed, the engineer
shall sign them in his official capacity and file them with the clerk
of the commissioners court.
9. Tex. Water Code Ann. § 56.117 (Vernon 1972), repealed by Act of May 24,
1999, 76th Leg., R. S., ch. 222, § 13, 1999 Tex. Sess. Law Serv. 717 (Vernon),
provided in 1991:


Improvements included in the engineer's report and adopted by the
commissioners court shall be constructed.
10. Tex. Water Code Ann. § 56.119, repealed by Act of June 16, 1995, 74th Leg.,
R. S., ch. 715, § 45, 1995 Tex. Sess. Law Serv. 3803 (Vernon), provided in 1991:

 

(a) Any district may exercise the power of eminent domain to
condemn and acquire the right-of-way over and through public
and private lands necessary for making canals, drains, levees, and
improvements in the district and for making necessary outlets
thereto in any county in the state. A district which is not
operating under Article XVI, Section 59, of the Texas Constitution
many not condemn property used for cemetery purposes. No
district may condemn right-of-way through any part of any
incorporated city without the consent of the lawful authorities.


(b) Eminent domain proceedings shall be in the name of the district
and under the direction of the board, and expenses arising from
the proceedings shall be paid from the construction and
maintenance fund.


(c) An appeal from the finding and assessment of damage made by
commissioners appointed for that purpose shall not suspend work
of the board in providing drainage.
11. Tex. Water Code Ann. § 56.121 (Vernon 1972) provides:


The board shall build necessary bridges and culverts across or over
canals, drains, ditches, laterals, and levees which cross a county or
public road and shall pay for the construction with funds of the district.
12. Tex. Water Code Ann. § 56.133 (Vernon 1972), repealed by Act of June 16,
1995, 74th Leg., R. S., ch. 715, § 45, 1995 Tex. Sess. Law Serv. 3803 (Vernon),
provided in 1991:


(a) The engineer shall furnish to the contractor a sectionized profile
of the contract work. The profile shall show:

 (1) the depth, width, and slope of canals, drains, ditches, and
levees;

 (2) the number of cubic yards of earth to be removed; and

 (3) other work to be done by the contractor.


(b) The contractor shall do the work under the supervision of the
engineer, who shall indicate to the contractor the points at which
the laterals shall intersect the main canal.


(c) The contractor may not deposit earth at a place at which it will
interfere with constructing laterals or other improvements in the
district or building bridges or other improvements on the public
roads.


(d) After the work is completed under the contract, the engineer shall
make a detailed report to the board showing whether or not the
contract has been complied with fully, and if not, the extent of
noncompliance.
13. Tex. Water Code Ann. § 56.134 (Vernon 1972), repealed by Act of June 16,
1995, 74th Leg., R. S., ch. 715, § 45, 1995 Tex. Sess. Law Serv. 3803 (Vernon),
provided in 1991:


The board shall inspect any work done under contract as the work
progresses.
14. At the time the Drainage District filed its motion for summary judgment,
appellants were the only plaintiffs and intervenors left in the lawsuit.
15. Torres was a suit by residents of the Spanish Acres neighborhood in
Harlingen against the Harlingen Irrigation District. The basis of the suit was flooding
caused by the same extreme rains involved in this case.
16. MOPAC settled with: (1) Aurelio Mendez on February 24, 1997; (2)
Guillermina Ruiz on April 7, 1997; and (3) Tomas and Teresa Padilla on April 11,
1997. On May 22, 1997, the trial court granted CP&L's motion for summary
judgment.
17. Because appellants do not contend the trial court erred in granting the original
motion for summary judgment on the issues of nuisance and inverse condemnation,
we will not address that motion. See Tex. R. App. P. 47.1.
18. Section 59 states, in relevant part:


(a) The conservation and development of all of the natural resources
of this State, including the control, storing, preservation and
distribution of its storm and flood waters, the waters of its rivers
and streams, for irrigation, power and all other useful purposes,
the reclamation and irrigation of its arid, semi-arid and other lands
needing irrigation, the reclamation and drainage of its overflowed
lands, and other lands needing drainage, the conservation and
development of its forests, water and hydro-electric power, the
navigation of its inland and coastal waters, and the preservation
and conservation of all such natural resources of the State are
each and all hereby declared public rights and duties; and the
Legislature shall pass all such laws as may be appropriate thereto.


(b) There may be created within the State of Texas, or the State may
be divided into, such number of conservation and reclamation
districts as may be determined to be essential to the
accomplishment of the purposes of this amendment to the
constitution, which districts shall be governmental agencies and
bodies politic and corporate with such powers of government and
with the authority to exercise such rights, privileges and functions
concerning the subject matter of this amendment as may be
conferred by law.


Tex. Const. art. XVI, § 59.

 
19. See Tex. Civ. Prac. & Rem. Code Ann. § 101.101 (Vernon 1997).