**TEXAS TACO CABANA, L.P., a Texas Limited Partnership, and T.C. Management, Inc., a Delaware Corporation, Plaintiffs,**

v.

**TACO CABANA OF NEW MEXICO, INC., a New Mexico Corporation, and T.M.S. Enterprises Limited Partnership, a New Mexico Limited Partnership, Defendants.**

**Taco Cabana of New Mexico, Inc., and T.M.S. Enterprises Limited Partnership, Counter Plaintiffs,**

v.

**Texas Taco Cabana, L.P., T.C. Management, Inc., Carrols Corporation, Counter Defendants and Third–Party Defendants.**

No. CIV. A. SA–02–CV–120.

United States District Court,
W.D. Texas.
San Antonio Division.

July 16, 2003.

Judith R. Blakeway, Strasburger & Price, L.L.P., R. Laurence Macon, Mary Claire Fischer, Akin, Gump, Strauss, Hauer & Feld, San Antonio, TX, Jeffrey J. Mayer, Freeborn & Peters, Chicago, IL, for plaintiffs/third–party defendant/counter–defendants.

Francisco Javier Garza, Davidson & Troilo, San Antonio, TX, W. Michael Garner, Sarah A. Johnston, Dady & Garner, P.A., Minneapolis, MN, for defendants/counter–plaintiffs.

## ORDER CONCERNING MOTION TO DISMISS

PRADO, District Judge.

On this date the Court considered Counter–Defendants' motion to dismiss filed in the above numbered and styled cause. After considering the motion and Counter–Plaintiffs' response, the Court will deny the motion in part and grant the motion in part.

### Factual Background

In this lawsuit, Plaintiffs Texas Taco Cabana and T.C. Management seek a declaratory judgment that Defendants have no right to develop additional Taco Cabana restaurants in New Mexico and no rights of first refusal related to the development of Taco Cabana restaurants in New Mexico. Plaintiffs allege that Defendants have no rights under an alleged 1994 Development Agreement because: (a) it expired by its own terms; (b) it was terminated; or (c) it was superseded by Defendants' execution of a second amendment, which also terminated Defendants' rights to develop any additional restaurants since it expired on November 1, 2001. Plaintiffs also seek a declaration that Defendants breached of their License Agreement and failed to comply with other agreements.

Defendants, acting as Counter–Plaintiffs (collectively "Franchisee"), filed a counter-claim against Texas Taco Cabana, L.P. and T.C. Management, Inc. and a Third–Party Action against Carrols Corporation (collectively "Franchisor") alleging, among other things, claims of violation of New Mexico Unfair Practices Act, violation of Texas Deceptive Trade Practices Act, breach of an implied covenant of good faith and fair dealing, and tortious interference with contract. Franchisor seeks dismissal of these claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### Rule 12(b)(6)

Motions to dismiss for failure to state a claim are disfavored in the law, and a court will only rarely encounter circumstances which justify granting such a motion. *See Mahone v. Addicks Utility Dist.*, 836 F.2d 921, 926 (5th Cir.1988); *Clark v. Amoco*

*Prod. Co.,* 794 F.2d 967, 970 (5th Cir.1986). A claim should not be dismissed upon such a motion unless it appears to a certainty (1) that no relief can be granted under any set of facts provable in support of its allegations, or (2) that the allegations, accepted as true, do not present a claim upon which relief legally can be obtained. *See Adolph v. Fed. Emergency Mgnt. Agency,* 854 F.2d 732, 735 (5th Cir.1988); *United States v. Uvalde Consol. Indep. Sch. Dist.,* 625 F.2d 547, 549 (5th Cir.1980). This stringent standard mirrors the liberal provisions of the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, which allows for "notice" pleading,[1] and which requires that pleadings be liberally construed "as to do substantial justice." *See Mahone,* 836 F.2d at 926 (quoting Rule 8(f)).

### Counter–Defendants' Motion to Dismiss under Rule 12(b)(6)

Counter–Defendants move to dismiss part of the counter-claim, stating that Counter–Plaintiffs have failed to state a claim upon which relief may be granted for claims of breach of an implied covenant of good faith and fair dealing, tortious interference with contract, violation of the New Mexico Unfair Practices Act, and violation of the Texas Deceptive Trade Practices Act. In response, Counter–Plaintiffs claim that the motion to dismiss should be denied because it is untimely under Rule 12(a) of the Federal Rules of Civil Procedure, because the simultaneous filing of the Answer to Counterclaim and Motion to Dismiss violated Rule 12(b)(6), and because the counterclaim states valid causes of actions.

### Whether the Motion to Dismiss is Defective

Counter–Plaintiffs first ask this Court to deny the motion to dismiss because it is untimely. Counter–Plaintiffs maintain the motion is untimely because it was filed simultaneously with Counter–Defendants' answer to Counter–Plaintiffs' counter-claim and was filed two weeks late. Ordinarily, a defendant should move to dismiss for failure to state a claim before answering. *See* FED. R. CIV. P. 12. Even though Rule 12 contemplates a motion to dismiss before an answer, a motion to dismiss provides a valuable tool for narrowing and clarifying the scope of litigation. When a defendant files a Rule 12(b) motion simultaneously with his answer, this Court has discretion to view the motion as having preceded the answer, and thus, as having been timely presented. *See Contois v. State Mut. Life Assurance Co.,* 66 F.Supp. 76, 77 (N.D.Ill.1945), *aff'd,* 156 F.2d 44 (7th Cir.1946).

Notably, Counter–Defendants included failure to state a claim upon which relief may be granted under Rule 12(b)(6) as their first affirmative defense in the answer. Because the defense was included in the answer, it was not waived and should be properly decided on the merits. *See Quintanilla v. K–Bin, Inc.,* 993 F.Supp. 560, 562 (S.D.Tex.1998); *Puckett v. United States.,* 82 F.Supp.2d 660, 663 (S.D.Tex.1999). While perhaps technically late, Counter–Defendants motion promises to narrow and clarify issues in this dispute. To the extent the motion is late, Counter–Defendants requested leave to file their motion in their reply to Counter–Plaintiffs' response to the motion to dismiss. As a result, the Court will consider the motion.

---

1. All that is required is " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (quoting Rule 8(a)(2)).

### Whether Counter–Complaint Contains a Valid Cause of Action

*Violation of New Mexico Unfair Practices Act.* Counter–Defendants claim in their motion to dismiss that Counter–Plaintiffs have failed to state a claim for violation of the New Mexico Unfair Practices Act because New Mexico law does not apply to this dispute. To decide the issue, the Court must determine which state law governs Counter–Plaintiffs' claims.

■ Choice–of–Law Provision. A federal court in a diversity case applies the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Texas has adopted the Restatement (Second) of Conflicts approach to contractual choice-of-law provisions. *See DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 677–78 (Tex.1990). Under Texas law, the parties' choice-of-law will be enforced unless the chosen law has no substantial relationship to the parties or the transaction or application of the law chosen would be contrary to a fundamental policy of a state that has a materially greater interest than the chosen state in the determination of a particular issue. *See Lemmon v. United Waste Sys.,* 958 S.W.2d 493, 498–99 (Tex.App.—Fort Worth 1997, pet. denied).

■ The agreement that centers this dispute contains a choice-of-law provision. The 1994 Development and License Agreement provides: "This Agreement takes effect upon its acceptance and execution by Licensor in the State of Texas, and shall be construed under the laws thereof, which law shall prevail in the event of any conflict of law." Although Counter–Defendants maintain this provision controls all of Counter–Plaintiffs' claims, Counter–Plaintiffs contend that the choice of law provision does not reach their tort claims.

■ Scope of Choice–of–Law Provision. The choice-of-law clause specifically refers to "This Agreement" which indicates the parties intended to restrict the clause to the interpretation or construction of the agreement itself. *See America's Favorite Chicken Co. v. Cajun Enterprises, Inc.,* 130 F.3d 180, 182 (5th Cir.1997). As a result, the agreement's narrow choice-of-law clause does not address the whole of the parties' relationship. Because the choice-of-law clause does not address the general rights and liabilities of the parties, this Court must apply Texas choice-of-law rules to determine which law applies to the tort claims set forth in the counter-complaint. *See Caton v. Leach Corp.,* 896 F.2d 939, 943 (5th Cir.1990).

■ Significant Relationship Test. Where the parties have not agreed to the application of law to a particular issue, Texas applies the "most significant relationship" test as enunciated in sections 6 and 145 of the Restatement (Second) of Conflicts. *See Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex.1979). Section 145 states:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include;

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICTS § 145. This Court must evaluate these contacts according to their relative importance with respect to the particular issue. *Id.*

█ Where the injury occurred. The goal of both parties appears to be ownership of the rights to develop Taco Cabana restaurants within the State of New Mexico, exclusive of Dona Ana County. The inability to develop in this location is the injury from which Counter–Plaintiffs seeks relief. Because the proposed development is in New Mexico, New Mexico is the place where the injury occurred.

Where the conduct causing the injury occurred. Counter–Plaintiffs allege that the conduct of Texas Taco Cabana, L.P., T.C. Management, and Carrols Corporation caused Counter–Plaintiffs' injury. Texas Taco Cabana L.P. is a limited partnership based in San Antonio, Texas. T.C. Management, Inc., is a Delaware corporation, also based in San Antonio, Texas. Counter–Defendant Carrols is a Delaware corporation with its principal place of business in Syracuse, New York. Nothing in the counter-complaint suggests Counter–Defendants acted outside of the areas in which they are based or maintain their principal places of business. Consequently, the Court concludes that the conduct causing the injury occurred in Texas and New York.

Domicile, residence, nationality, place of incorporation and place of business of the parties. Counter–Plaintiff Taco Cabana of New Mexico, Inc., is a New Mexico corporation with its principal place of business in Placitas, New Mexico. Counter–Plaintiff T.M.S. Enterprises, Inc. is a New Mexico limited partnership also with its principal place of business in Placitas, New Mexico. As stated above, Texas Taco Cabana is based in Texas. T.C. Management is a Delaware corporation also based in Texas. Carrols is a Delaware corporation with its principal place of business in New York. Because of the diversity of citizenship of the parties, these contacts do not seem to indicate any particular state.

Where the relationship between the parties is centered. The basis of the relationship between the parties is the contracts between them. The choice-of-law clause within the contract, while not specifically addressing torts, illustrates the contract is most strongly associated with Texas. Because the relationship is formed on the basis of a Texas contract, the relationship between the parties is centered in Texas.

Taken together, these contacts indicate Texas law applies to the tort claims because, although the injury occurred in New Mexico, the conduct causing the injury occurred in Texas and the relationship between the parties is centered in Texas. The Restatement (Second) of Conflicts, however, instructs courts to consider these contacts under the principles listed in section 6.[2]

**2.** (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICTS § 6.

Of the contacts included in section 6, the sixth factor is implicated here-the certainty, predictability and uniformity of result. While the Franchisee and potential future restaurants are in New Mexico, these only exist in relation to the Franchisor which is located in Texas. The Franchisor acts as a hub for all Franchisees, whether in Texas, New Mexico, or another state. To require that each dispute be settled under the law of the Franchisees, which may be in a variety of states, may create different results stemming from the same contract with the same Franchisor. The certainty, predictability and uniformity of result of contracts will be protected by focusing on the single state which will have a substantial relationship to every contract involving the Franchisor and a Franchisee. Here, Texas is that state, by virtue of the location of Franchisor. After considering the Restatement factors under the principles of section 6, the Court determines that Texas law applies to the tort claims set forth in the counter-claim. Because Texas, rather than New Mexico, governs the Counter–Plaintiffs' tort claims, the Court will dismiss the claim for violation of New Mexico Unfair Practices Act.

*Violation of the Texas Deceptive Trade Practices Act (DPTA).* Counter–Plaintiffs allege that Franchisor violated the DTPA by knowingly committing unconscionable acts which damaged Counter–Plaintiffs. Counter–Defendants move to dismiss because the claims are allegedly based only on a disagreement over interpretation of the contracts at issue rather than upon unconscionable acts. Counter–Defendants further allege that the required reliance is not present because of an acknowledgment of the Franchisee that they would conduct their own investigation concerning the volume, profits, or success of the business venture.

 A disagreement over the interpretation of a contract is not actionable under the DTPA. *See Enterprise–Laredo Assoc. v. Hachar's,* 839 S.W.2d 822, 828–29 (Tex.App.—San Antonio 1992, writ denied with per curiam opinion); *Quitta v. Fossati,* 808 S.W.2d 636, 644 (Tex.App.-Corpus Christi 1991, writ denied). Counter–Plaintiffs, however, base their claims not only on a disagreement of interpretation but also on the existence of false and deceptive pretenses, including that the Franchisor falsely claimed that the executed 1994 Development Agreement did not exist. (Counterclaim at ¶ 47). Counter–Defendants further allege that there is no reliance by virtue of the acknowledgment clauses included in the 1994 Development Agreement and the 1994 License Agreement which each provides:

> Developer acknowledges that Developer has conducted an independent investigation of the business licensed hereunder, and recognizes that the business venture contemplated by this Agreement involves business risks and that its success will be largely dependent upon the ability of Developer as an independent businessman. Licensor expressly disclaims the making of, and, Developer acknowledges that Developer has not received, any warranty or guarantee, express or implied, as to the potential volume, profits or success of the business venture contemplated by this Agreement. Developer acknowledges that is has received, read and understood this Agreement, the exhibits hereto, if any, and agreements relating thereto, if any, and that Licensor has provided Developer ample time and opportunity to consult with advisors of Developer's own choosing about the potential benefits and risk of entering into this Agreement.

 Reliance is essential to recover under the DTPA. *See* TEX. BUS. & COMM. CODE ANN. § 17.50(a)(1)(B) (Vernon 2002). When a party to a contract contractually

stipulates that he is not relying on any representations, statements, or other assertions, but is relying on his own investigation, the stipulation may negate reliance essential to recovery under the DTPA. *See Prudential Ins. Co. v. Jefferson Assoc., Ltd.,* 896 S.W.2d 156, 161 (Tex.1995). However, acknowledgment clauses may bar only representations expressly excluded by the written disclaimer. *See, e.g., Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.,* 61 F.3d 639, 642 (8th Cir.1995); *Ramada Franchise Sys., Inc. v. Tresprop, Ltd.,* No. 98–2511–DJW, 2000 WL 290349, at *11 (D.Kan. Mar. 10, 2000).

Here the acknowledgment of non-reliance quoted by Counter–Defendants refers only to financial projections. It does not bar the Franchisee from producing evidence of reliance on the Franchisor's subsequent representations related to matters outside the scope of the disclaimers. Since the Franchisee's DTPA claims do not involve the subject matter of the disclaimers, the Court finds that there has been no waiver of reliance on the part of the Franchisee. Because the claims are based on alleged deceptive acts of Franchisor beyond a disagreement of interpretation and reliance has not been waived, it is proper to deny the motion to dismiss the claims of Violation of the Texas Deceptive Trade Practices Act.

■■■■■ *Breach of Covenant of Good Faith and Fair Dealing.* Counter–Plaintiffs allege that Franchisor has breached an implied covenant of good faith and fair dealing. Counter–Defendants move to dismiss on grounds that there is no duty of good faith and fair dealing between the parties. Ordinarily, there is no duty of

good faith and fair dealing in commercial contracts under Texas law. *See Formosa Plastics Corp. v. Presidio Engr's & Contr.,* 960 S.W.2d 41, 52 (Tex.1998); *English v. Fischer,* 660 S.W.2d 521, 522 (Tex.1983). Absent a special relationship, there is no common law duty between parties to a contract to act in good faith. *See El Paso Natural Gas Co. v. Minco Oil & Gas,* 8 S.W.3d 309, 310–12 (Tex.1999). Usually, there is no special relationship between a franchisor and a franchisee. *See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 596 (Tex. 1992). However, such a duty may arise if one person trusts and relies on another. *See id.* at 594.

■■■■■ Here Counter–Plaintiffs have pleaded facts to show that Mel Sloan relied on the promises of the Franchisor.[3] For purposes of a motion to dismiss, the Court may not decide disputed fact issues but must instead assume all material facts contained in the complaint are true. *See Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000). Therefore, this Court must assume that the relationship between parties is as described by Counter–Plaintiffs.

According to Counter–Plaintiffs, after the development agreement was signed the Franchisor repeatedly urged Mel Sloan to concentrate on his health when he was diagnosed with brain cancer. Franchisor also reassured Mel Sloan that the Franchisee's development rights under the agreements would not be jeopardized by delay incurred while Mr. Sloan focused on his health. (Counterclaim at § 19 & § 21). Apparently Mr. Sloan focused on his

---

3. The existence of a special relationship is not precluded by the acknowledgment in the Development Agreement which stated:

Nothing in the Agreement shall be construed as creating a fiduciary relationship between the parties...

(Ex. A. ¶ 11 Counter–Claim). This acknowledgment concerns only the terms of the agreement and not the later promises upon which Counter–Plaintiffs base their claim.

health and delayed construction although he felt he would have been able to proceed in a timely manner had it been necessary under the contract. (Counterclaim at § 19 & 20). As pleaded by Counter–Plaintiffs, these interactions created a relationship in which Mr. Sloan relied on the promises of the Franchisor with the understanding that a delay in development would not have repercussions. A special relationship of the type described would create a duty of good faith under Texas Law. Therefore, under the facts as pleaded by Counter–Plaintiffs, the counter-complaint states a valid claim and should not be dismissed.

*Tortious Interference with Contract and Prospective Contractual Relations.* Counter–Plaintiffs allege that the Franchisor is interfering or threatening to interfere with Taco Cabana New Mexico's contractual relations with its suppliers, employees and other third parties and with its prospective contractual relations with customers. Counter–Plaintiffs further claim Carrols has tortiously interfered with, and is threatening to continue to interfere with, Taco Cabana New Mexico's contractual relations with T.C. Management. Counter–Defendants allege that Counter–Plaintiffs have failed to state a claim because Carrols was unable to interfere with relations with T.C. Management as a matter of law.

■ As a matter of law, a parent corporation is incapable of tortiously interfering with its subsidiary's contracts. *See H.S.M. Acquisitions, Inc. v. West,* 917 S.W.2d 872, 882 (Tex.App.-Corpus Christi 1996, writ denied); *Am. Med. Int'l, Inc. v. Giurintano,* 821 S.W.2d 331, 336 (Tex. App.—Houston [14th Dist.] 1991, no writ). A parent and its subsidiary are so closely aligned in business interest as to render them, for tortious interference purposes, the same entity. *See Deauville Corp. v. Federated Dep't Stores, Inc.,* 756 F.2d 1183, 1196 (5th Cir.1985). Neither the parent nor subsidiary can tortiously inter-

fere with the other because their financial interests are identical. *Id.* at 1196–97.

■ It is undisputed that Carrols is the corporate parent of T.C. Management. (Counter–Claim at ¶ 10 and Answer to Counter–Claim at ¶ 10). As T.C. Management's corporate parent, Carrols is incapable of interfering with the contract between T.C. Management and Taco Cabana New Mexico. *See H.S.M. Acquisitions, Inc.,* 917 S.W.2d at 882. Carrols, however, does not own the other parties named in the complaint, specifically suppliers, employees, and other third parties. Because Carrols does not own these other parties Carrols is still able to interfere with contracts between Taco Cabana New Mexico those parties. Accordingly, the Court will dismiss the claim of tortious interference with contract and prospective contractual relations only as it regards Carrols's interference with contracts between T.C. Management and Taco Cabana New Mexico.

### Conclusion

Based on the foregoing, the Court GRANTS the motion to dismiss (docket entry # 23) in part to the extent the Court DISMISSES Counter–Plaintiffs' claims under the New Mexico Unfair Practices Act and Counter–Plaintiffs' claims for tortious interference with contract and prospective contractual relations the claims regard Carrols's interference with contracts between T.C. Management and Taco Cabana New Mexico.

With this matter resolved, the Court ORDERS the parties to confer pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and to propose scheduling deadlines by August 1, 2003. If the parties fail to propose scheduling deadlines by that date, the Court will enter a scheduling

order without recommendations from the parties.