ALAN D ALBRIGHT, UNITED STATES DISTRICT JUDGE
Came on for consideration ProTradeNet, LLC and Dwyer Franchising, LLC's Motion to Dismiss Predictive Profile, Inc.'s First Amended Complaint, (ECF No. 4 in case no. 6:18-CV-39 entitled Predictive Profiles, Inc., v. Protradenet, LLC et al ("Member Case") ), and Predictive Profiles, Inc.'s First Amended Complaint, (ECF No. 2 in Member Case). The Court has also considered all responses and replies to the Motion to Dismiss. After careful consideration, the Court is of the opinion that the Motion should be GRANTED IN PART and DENIED IN PART.
BACKGROUND
This suit arises out of a Distributor Vendor Relations Agreement ("Agreement") between ProTradeNet, LLC ("ProTradeNet") and Predictive Profiles, Inc. ("Predictive").[1] Both sides agree the Agreement was formalized in February of 2017. Pl.'s Am. Compl. ¶ 2, ECF No. 2 in Member Case; Defs.' Mot. Dismiss at 2, ECF No. 4 in Member Case. Under the terms of the Agreement, Predictive agreed to post jobs for Defendants' franchisors by use of Predictive's web-based employee application system. Pl.'s Am. Compl. ¶ 2, ECF No. 2 in Member Case; Defs.' Mot. Dismiss at 2, ECF No. 4 in Member Case. In return, ProTradeNet agreed to recommend Predictive to its franchisors' franchisees and encourage those franchisees to use Predictive's services. Pl.'s Am. Compl. ¶¶ 39-40, ECF No. 2 in Member Case.
Plaintiff claims that just a few months after Predictive and Protradenet formalized the Agreement, ProTradeNet breached *790 that Agreement by, among other things, failing to recommend Predictive to its franchisors' franchisees. Pl.'s Am. Compl. ¶¶ 40-41, 55, ECF No. 2 in Member Case. Plaintiff also alleges that ProTradeNet specifically told franchise owners to stop using Predictive and that Dwyer pushed ProTradeNet to unilaterally terminate the Agreement. Id. at ¶¶ 40-42, 58-61, 70-73. Finally, Plaintiff alleges that Dwyer and ProTradeNet interfered with the prospective contracts Plaintiff had a reasonable probability of entering into with other franchisees in Dwyer's system. Id. ¶¶ 64-66.
After the dispute over the Agreement arose, ProTradeNet filed its Original Petition in state court on January 12, 2018. Notice Removal at 1, ECF No. 1 in Lead Case. ProTradeNet sought a declaratory judgment from the court declaring that the Agreement did not create a partnership relationship between it and Predictive. Pl.'s Pet. at 3, ECF No. 1-1 in Lead Case. Predictive removed the case to this Court on February 9, 2018. Notice Removal, ECF No. 1 in Lead Case. The same day Predictive removed the case, Predictive filed its Original Complaint in the Member Case seeking affirmative relief against Defendants. Pl.'s Am. Compl., ECF No. 1 in Member Case. On April 24, 2018, Defendants filed their Motion to Dismiss. Defs.' Mot. Dismiss, ECF No. 4 in Member Case. On August 23, 2018, Magistrate Judge Manske ordered that the Member Case and the Lead Case be consolidated and that the current case becomes the Lead Case. Order at 5, ECF No. 20 in Lead Case. Defendants' Motion to Dismiss in the Member Case remains pending.
LEGAL STANDARD
To survive a 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is both legally cognizable and plausible on its face, but the court should not evaluate the plaintiff's likelihood of success. Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ; Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC , 594 F.3d 383, 387 (5th Cir. 2010). When the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct, then the claim is plausible on its face. Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ; Harold H. Huggins Realty, Inc. v. FNC, Inc. , 634 F.3d 787, 796 (5th Cir. 2011) (internal citation and quotation marks omitted).
The plausibility standard, unlike the "probability requirement," requires more than a sheer possibility that a defendant acted unlawfully. Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. The pleading standard does not require detailed factual allegations, but it does demand greater specificity than an unadorned, "the-defendant-unlawfully-harmed-me accusation." Id. ; Fed. R. Civ. P. 8(a)(2). A pleading that offers "labels and conclusions," "naked assertion[s]" devoid of "further factual enhancement," or "a formulaic recitation of the elements of a cause of action" will not suffice. Twombly , 550 U.S. at 555, 557, 127 S.Ct. 1955 ; see also Taylor v. Books A. Million, Inc. , 296 F.3d 376, 378 (5th Cir. 2002). Evaluating the plausibility of a claim is a context specific process that requires a court to draw on its experience and common sense. Iqbal , 556 U.S. at 679, 129 S.Ct. 1937.
DISCUSSION
Plaintiff filed numerous claims against Defendants based on the Agreement. The Court dismisses Plaintiff's claim against Dwyer for tortious interference with the Agreement for the reasons set forth below. Additionally, the Court grants Plaintiff *791 leave to amend its claims against both Dwyer and ProTradeNet for tortious interference with prospective contracts. The Court also grants Plaintiff leave to amend its claims against ProTradeNet for tortious interference with existing contracts. Finally, the Court denies Defendants' Motion to Dismiss as it pertains to Plaintiff's claim against ProTradeNet for breach of contract.
I. Plaintiff's claim against Dwyer for tortious interference with an existing contract
Plaintiff alleges that Dwyer tortiously interfered with ProTradeNet and Predictive's Agreement. Because a parent company cannot tortiously interfere with its subsidiary's contracts, the Court dismisses Plaintiff's claim against Dwyer.
The elements of tortious interference with a contract are: "(1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred." Holloway v. Skinner , 898 S.W.2d 793, 795-96 (Tex. 1995) (citing Browning-Ferris Indus. v. Reyna , 865 S.W.2d 925, 926 (Tex. 1993) ; Victoria Bank & Trust Co. v. Brady , 811 S.W.2d 931, 939 (Tex. 1991) )
Generally, " 'a [defendant] must be a stranger to a contract to tortiously interfere with it.' " In re Vesta Ins. Group, Inc. , 192 S.W.3d 759, 761 (Tex. 2006) (quoting Morgan Stanley & Co., Inc. v. Tex. Oil Co. , 958 S.W.2d 178, 179 (Tex. 1997) ); see also Holloway , 898 S.W.2d at 794-95. " '[A defendant] cannot tortiously interfere with its own contract.' " Vesta Ins. Group , 192 S.W.3d at 761 (quoting Holloway , 898 S.W.2d at 796 ). The Texas Supreme Court has also held that there can be no tortious interference when there is a complete identity of interests between a party to a contract and the defendant who is accused of interfering with the contract. Holloway , 898 S.W.2d at 795, 797 ; see also Grizzle v. Tex. Commerce Bank, N.A. , 38 S.W.3d 265, 286 (Tex. App.-Dallas 2001), rev'd in part on other grounds , 96 S.W.3d 240 (Tex. 2002).
A significant number of Texas appellate courts have held that a corporate parent and its subsidiary are so closely aligned that the parent company is incapable of tortiously interfering with its subsidiary's contracts. Cleveland Reg'l Med. Ctr., L.P. v. Celtic Properties, L.C. , 323 S.W.3d 322, 348 (Tex. App.-Beaumont 2010, pet. denied) ("We agree with the courts of appeals in Houston, Corpus Christi, and Dallas and conclude that as a matter of law, a parent company cannot tortiously interfere with the contracts of its wholly owned subsidiary."); Am. Med. Int'l., Inc. v. Giurintano , 821 S.W.2d 331, 336 (Tex. App.-Houston [14th Dist.] 1991, no writ) ("Again Giurintano's pleadings established that Doctors' Hospital is a completely owned subsidiary of AMI. As such, they are so closely aligned that it is impossible, as a matter of law, for one to tortiously interfere with the other."); H.S.M. Acquisitions, Inc. v. West , 917 S.W.2d 872, 883 (Tex. App.-Corpus Christi 1996, writ denied) (holding that parent-subsidiary relationship prevents a tortious interference claim as a matter of law); Grizzle , 38 S.W.3d at 286 ("We conclude, as a matter of law, that New Galveston, a parent corporation with a complete identity of financial interest with its wholly owned subsidiary, Frost, cannot tortiously interfere with Frost's trust agreements with Grizzle.").
The Fifth Circuit has also weighed in on this area of Texas law. In Deauville Corp. v. Federated Dept. Stores, Inc. , the Fifth Circuit held that a parent company and its subsidiary are so closely aligned in their *792 business interests as to render them, for tortious interference purposes, the same entity. 756 F.2d 1183, 1196-97 (5th Cir. 1985). The Fifth Circuit's decision has had a major impact on Texas law, as illustrated by the fact that each of the Texas appellate court cases cited above referenced Deauville as a major authority supporting their holdings. Cleveland Reg'l Med. Ctr., L.P. , 323 S.W.3d at 347 ; Am. Med. Intern., Inc. , 821 S.W.2d at 336 ; H.S.M. Acquisitions, Inc. , 917 S.W.2d at 882 ; Grizzle , 38 S.W.3d at 286.
As also cited by most of the Texas appellate courts listed above, the United States Supreme Court in Copperweld Corp. v. Indep. Tube Corp. , 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) rendered an important decision on a similar issue. Cleveland Rg'l Med. Ctr. , 323 S.W.3d at 347 ; Am. Med. Int'l., Inc. , 821 S.W.2d at 336 ; H.S.M. Acquisitions, Inc. , 917 S.W.2d at 882-83. Although in the context of the Anti-Sherman Act, the Supreme Court analyzed the nature of the relationship between a parent and its subsidiary when it wrote as follows:
A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver. With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder. If a parent and a wholly owned subsidiary do "agree" to a course of action, there is no sudden joining of economic resources that had previously served different interests ...
[I]n reality a parent and a wholly owned subsidiary always have a 'unity of purpose or a common design.' They share a common purpose whether or not the parent keeps a tight rein over the subsidiary; the parent may assert full control at any moment if the subsidiary fails to act in the parent's best interest.
Copperweld Corp. , 467 U.S. at 771-72, 104 S.Ct. 2731 (emphasis added)(footnote omitted). Thus, the Supreme Court has recognized that a parent company and its wholly owned subsidiary's "general corporate actions are guided ... not by two separate corporate consciousnesses, but one" and that both companies "always have 'unity of purpose or a common design.' " Id. at 771, 104 S.Ct. 2731. As already explained above, in Texas, "[w]hen there is complete identity of interests, there can be no interference as a matter of law." Holloway , 898 S.W.2d at 797. Therefore, just like its Texas appellate court counterparts, this Court determines that the language in Copperweld is compelling support for the rule that a parent company cannot tortiously interfere with the contracts of its subsidiary.
Finally, the Western District of Texas has already held that a parent company cannot tortiously interfere with the contracts of its subsidiary. In Tex. Taco Cabana, L.P. v. Taco Cabana of N.M., Inc. , the court held, "[a]s a matter of law, a parent corporation is incapable of tortiously interfering with its subsidiary's contracts." 304 F.Supp.2d 903, 912 (W.D. Tex. 2003) (citing H.S.M. Acquisitions, Inc. , 917 S.W.2d at 882 ; Am. Med. Int'l., Inc. , 821 S.W.2d at 336 ). In support of its holding, the court reasoned, "a parent and its subsidiary are so closely aligned in business interest as to render them, for tortious interference purposes, the same entity. Tex. Taco Cabana , 304 F.Supp.2d at 912 (citing Deauville Corp. , 756 F.2d at 1196 ).
In this case, Plaintiff claims Dwyer is the corporate parent and owner of ProTradeNet. Pl.'s Am. Compl. ¶¶ 2, 6, 24, ECF
*793 No. 2 in Member Case. Plaintiff also pleads that Dwyer intentionally and maliciously interfered with the Agreement between Predictive and ProTradeNet, which caused ProTradeNet to breach its contract with Predictive. Id. at ¶¶ 70-71. As a result of this alleged tortious interference, Plaintiff is claiming damages in excess of $ 75,000. Id. at ¶ 74.
Plaintiff's claim for tortious interference against Dwyer fails as a matter of law. As already discussed, a corporate parent is incapable of tortiously interfering with the contracts of its subsidiary. This rule is based on Texas appellate court precedent, Fifth Circuit precedent, United States Supreme Court precedent, and Western District of Texas precedent. Cleveland Reg'l Med. Ctr., L.P. , 323 S.W.3d at 348 ; Am. Med. Int'l., Inc. , 821 S.W.2d at 336 ; H.S.M. Acquisitions, Inc. , 917 S.W.2d at 883 ; Grizzle , 38 S.W.3d at 286 ; Deauville Corp. , 756 F.2d at 1196-97 ; Copperweld Corp. , 467 U.S. at 771-72, 104 S.Ct. 2731 ; Tex. Taco Cabana, L.P. , 304 F.Supp.2d at 912. Therefore, this Court will follow the great weight of authority and dismiss with prejudice Plaintiff's tortious interference claim against Dwyer.
Plaintiff argues that whether a parent company can tortiously interfere with the contracts of its subsidiary is still an unsettled area of Texas law. Pl.'s Mem. Law Opp'n Mot. Dismiss at 7, ECF No. 6 in Member Case. In support of its argument, Plaintiff primarily relies on one Texas appellate court case. Id. at 8.[2] In Valores , the San Antonio Court of Appeals issued a decision inconsistent with its sister courts, and determined that a parent company is privileged to interfere with its subsidiary's contractual relations only " 'when the contract threatens a present economic interest of its wholly-owned subsidiary,' and the parent does not 'employ[ ] wrongful means or act[ ] with an improper purpose.' " Valores , 945 S.W.2d at 168 (quoting T.P. Leasing Corp. v. Baker Leasing Corp. , 293 Ark. 166, 732 S.W.2d 480, 483 (1987) ). The court then held, "a parent corporation is legally capable of tortiously interfering with its wholly-owned subsidiary's contractual relationship." Id. at 168.
This Court finds Plaintiff's argument and supporting caselaw unpersuasive. As discussed above, the vast weight of the authority supports the rule that, as a matter of law, a parent company cannot tortiously interfere with its subsidiary's contracts. The amount of authority alone is enough for this Court to dismiss Plaintiff's tortious interference claim against Dwyer. However, even if this Court were to analyze Plaintiff's allegations under the Valores rule, Plaintiff's claim still fails.
In Valores , the court stated that a parent company is privileged to interfere with its subsidiary's contractual relations (1) when the contract threatens a present economic interest of its wholly-owned subsidiary and (2) the parent does not employ wrongful means or act with an improper purpose. Valores , 945 S.W.2d at 168. In this case, Plaintiff claims Dwyer acted with an improper purpose when it interfered with Plaintiff and ProTradeNet's contract.
*794 Pl.'s Am. Compl. ¶ 19, ECF No. 2 in Member Case. Plaintiff describes the source of the improper purpose in its Amended Complaint when it writes, "[u]pon information and belief, at least one Dwyer board member has a financial stake in Career Plug." Id. Career Plug is the company Plaintiff complains ProTradeNet transferred its business to after ProTradeNet breached its contract with Predictive. Id. ¶ 71. Thus, Plaintiff's claim of improper purpose arises from its allegation that "[m]embers of Dwyer's board have a connection with Career Plug which strongly suggests the motive for interference was for those individuals' personal gain." Id. at ¶ 72.
Plaintiff fails to plead any factual enhancement to these allegations. In its own Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Plaintiff describes Dwyer's relationship with Career Plug as follows:
Dwyer's interference with the Agreement was - allegedly - not motivated by the financial interests of Dwyer and/or ProTradeNet, but rather the financial interests of the third party, Career Plug, which is allegedly owned by one or more officers of Dwyer. If this allegation proves true, Dwyer acted improperly by interfering with ProTradeNet's contract with Predictive and that interference was not privileged.
Pl.'s Mem. Law Opp'n Mot. Dismiss at 9, ECF No. 6 in Member Case (emphasis added). It is telling that Plaintiff emphasizes Dwyer's connection with Career Plug is only an "alleged" connection. Furthermore, Plaintiff fails to plead any facts to support its assertion that Dwyer's officers engaged in self-dealing. Without more, Plaintiff's claim is nothing more than a "naked assertion" devoid of "further factual enhancement" and does not give rise to a plausible claim. Twombly , 550 U.S. at 555, 557, 127 S.Ct. 1955 ; see also Taylor , 296 F.3d at 378. Thus, Plaintiff's claim still fails even when the Court analyzes it under the Valores rule.
Therefore, the Court dismisses Plaintiff's tortious interference claim against Dwyer for failure to state a claim upon which relief may be granted. The Court also denies Plaintiff's request to amend this claim because an amendment would be futile as nothing Plaintiff could plead would change its fundamental allegation that a parent company tortiously interfered with its subsidiary's contract.
II. Plaintiff's claims against Dwyer and ProTradeNet for tortious interference with prospective contracts
Plaintiff alleges that both Dwyer and ProTradeNet tortiously interfered with Plaintiff's prospective contracts. For the reasons set forth below, Plaintiff's claims do not meet the Rule 12(b)(6) plausibility standard.
Texas recognizes tortious interference with prospective business relationships. El Paso Healthcare Sys., Ltd. v. Murphy , 518 S.W.3d 412, 421 (Tex. 2017). To recover for tortious interference with a prospective business relation, a plaintiff must prove that the defendant's conduct was independently tortious or wrongful. Wal-Mart Stores, Inc. v. Sturges , 52 S.W.3d 711, 726 (Tex. 2001). To be independently tortious, "the plaintiff must prove that the defendant's conduct would be actionable under a recognized tort." Id.
The Texas Supreme Court has listed several examples of the kinds of actions that constitute independently tortious conduct. For instance, a plaintiff may recover for tortious interference by proving that the defendant made fraudulent statements about the plaintiff to a third *795 party. Id. A plaintiff can also recover for tortious interference if he can show an illegal boycott or that the defendant threatened a person with physical harm if he does business with a plaintiff. Id. Finally, "[c]onduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations." Id.
In this case, Plaintiff fails to allege that either Dwyer or ProTradeNet committed any independently tortious conduct. Instead, all Plaintiff claims is "upon information and belief, ProTradeNet and Dwyer specifically told franchise owners to stop using Predictive" and "[u]pon information and belief, Dwyer pushed ProTradeNet to unilaterally terminate the parties' contract." Pl.'s Am. Compl. ¶¶ 40-41, ECF No. 2 in Member Case. At most, these are allegations of unfair or sharp conduct, and do not rise to the level of independently tortious conduct. Therefore, because Plaintiff fails to allege independently tortious conduct, it fails to plead a plausible claim. Instead of dismissing Plaintiff's claims outright, the Court grants Plaintiff leave to replead its tortious interference with prospective contracts claims against Dwyer and ProTradeNet. Plaintiff is notified that failure to amend may result in their dismissal.
III. Plaintiff's claims against ProTradeNet for tortious interference with existing contracts
Under "Count II" of Plaintiff's Amended Complaint, Predictive claims it "currently has, and previously had, existing contracts with its third-party franchisee customers as described above." Pl.'s Am. Compl. ¶ 58, ECF No. 2 in Member Case. Plaintiff then claims ProTradeNet willfully interfered with these contracts by encouraging Plaintiff's customers to stop using Plaintiff's product. Id. ¶ 60. It is unclear whether the "third-party franchisee customers" Plaintiff describes are Defendants' franchisees, or if Plaintiff is referring to its customers that are not affiliated with Defendants. Considering this ambiguity, Plaintiff is directed to amend its allegation to clarify its claims. Plaintiff is notified that failure to amend its allegation may result in dismissal of its claims.
IV. Plaintiff's claim against ProTradeNet for breach of contract
The Court finds that Plaintiff's claim for breach of contract against ProTradeNet has merit. Therefore, the Court denies Defendants' Motion to Dismiss insofar as it pertains to this claim.
CONCLUSION
IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss, (ECF No. 4 in Member Case), as it pertains to Plaintiff's claim against Dwyer for tortious interference with the Agreement between Predictive and ProTradeNet is GRANTED.
IT IS FURTHER ORDERED that Plaintiffs claim against Dwyer for tortious interference with the Agreement between Predictive and ProTradeNet is DISMISSED WITH PREJUDICE. The Court also DENIES Plaintiff's request to amend this claim.
IT IS FURTHER ORDERED that Plaintiff is GRANTED LEAVE TO AMEND its claims for tortious interference with prospective contracts against both Dwyer and ProTradeNet. Predictive is directed to file its amended claims as Original Counterclaims in the Lead Case. Predictive's Original Counterclaims shall be due on February 7, 2019.
IT IS FURTHER ORDERED that Plaintiff is GRANTED LEAVE TO AMEND its claims for tortious interference *796 with existing contracts against ProTradeNet. As previously stated, Predictive's Original Counterclaims in the Lead Case shall be due on February 7, 2019.
IT IS FINALLY ORDERED that Defendants' Motion to Dismiss, (ECF No. 4 in Member Case), as to Plaintiff's claim for breach of contract against ProTradeNet is DENIED.

The Court notes that in this lead case, (case no. 6:18-CV-38 entitled Protradenet, LLC v. Predictive Profiles, Inc. ("Lead Case") ), ProTradeNet is the plaintiff and Predictive is the defendant. However, in the Member Case in which the Motion to Dismiss was filed, Predictive is the plaintiff and ProTradeNet and Dwyer Franchising, LLC ("Dwyer") are the defendants. Although this Order is filed in the Lead Case, the Court is ruling on the Motion to Dismiss Defendants filed in the Member Case. Therefore, for the purposes of this Order, the Court will refer to Predictive as "Plaintiff" and ProTradeNet and Dwyer as "Defendants."

The case Plaintiff primarily relies on is Valores Corporativos, S.A. de C.V. v. McLane Co., Inc. , 945 S.W.2d 160, 168 (Tex. App.-San Antonio 1997, writ denied). However, Plaintiff has also cited to Ashlar Fin. Servs v. Sterling Fin. Co. , a Northern District of Texas case, to support its position on this issue. Pl.'s Mem. Law Opp'n Mot. Dismiss at 8, ECF No. 6 in Member Case; CIV. A. 300CV2814-AH, 2002 WL 206439 (N.D. Tex. Feb. 8, 2002). The Court notes that the court in Ashlar primarily relied on Valores to reach its decision that a parent company can tortiously interfere with its subsidiary's contracts. Ashlar , 2002 WL 206439, at *8. Therefore, the Court finds Plaintiff's reliance on Ashlar unpersuasive for the same reasons it finds Plaintiff's reliance on Valores unpersuasive.